[Cite as *State v. Kind*, 2018-Ohio-3309.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 106413**

**STATE OF OHIO**

PLAINTIFF-APPELLEE

vs.

**GEORGE CASANOVA KIND**

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-17-614971-A

**BEFORE:** Jones, J., Boyle, P.J., and Celebrezze, J.

**RELEASED AND JOURNALIZED:** August 16, 2018

**ATTORNEY FOR APPELLANT**

Mary Catherine Corrigan
4403 St. Clair Avenue
Cleveland, Ohio 44103


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor

BY: Brandon Piteo
Assistant County Prosecutor
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113

LARRY A. JONES, SR., J.:

{¶1}  Defendant-appellant, George Casanova Kind ("Kind"), appeals his conviction for

having weapons while under disability.    For the reasons that follow, we affirm.

{¶2} In 2017, Kind was charged with attempted murder, two counts of felonious assault, and having weapons while under disability.    The attempted murder and felonious assault charges were accompanied by one- and three-year firearm and repeat violent offender specifications and notices of prior conviction.

{¶3} The matter proceeded to a jury trial.    The repeat violent offender specifications, notices of prior conviction, and having weapons while under disability count were tried to the bench.    The following evidence was adduced at trial.

{¶4} In 2010, Raymond Carter ("Carter") was convicted of a sex crime against one of Kind's relatives and served two years in prison.    Carter and Kind had known each other a long time; Carter was childhood friends with Kind's siblings.

{¶5} The state alleged that in February 2017, Carter stopped at a convenience store to purchase cigarettes.    As he walked out of the store, he heard someone call his nickname, "Junior," from a white van.    He saw two men exit the van and recognized one of the men as Kind.    Kind asked Carter for a "light" and Carter gave him his cigarette to use as a light.    It was at this point that Carter saw that Kind was holding a handgun.    Kind started shooting at Carter.

{¶6} Carter began to run, but Kind kept shooting at him.    According to Carter, he tried to run into a store, but the store was locked.    Carter ended up on the ground in the street.    A woman came to his aid and he was eventually taken to the hospital.    Carter sustained four gunshot wounds and underwent multiple surgeries.    The doctors were able to recover a bullet fragment from Carter.

{¶7} Carter testified that he was shot near the intersection of East 55th Street and Central

Avenue. Officer Patrick Valencic testified that the police did not locate any shell casings or weapons in the area.

{¶8} The day after the shooting, Carter told his brother, Leroy, that it was Kind who shot him. Leroy contacted the police and gave them Kind's name. The police interviewed Carter several days after the shooting while he was still in the hospital. Carter identified Kind in a photo lineup at that time and identified him as the shooter during trial.

{¶9} Detective Ronald James ("Detective James"), who investigated the case, canvassed the area, but was unable to find any video surveillance that captured the location where Carter said the shooting occurred. Detective James also interviewed Kind. Kind initially denied knowing Carter, but later admitted he knew Carter, but only as "Junior" or "Ju Ju." Kind did not give the detective any further information.

{¶10} The jury returned a not guilty verdict on all counts tried to it. The trial court acquitted Kind of the specifications and notices of prior conviction attached to the felonious assault and attempted murder counts. The court convicted Kind of having a weapon while under disability and sentenced him to 24 months in prison.

{¶11} This appeal followed.

{¶12} Kind raises one assignment of error on appeal:

I. The guilty verdict cannot be upheld because evidence and testimony presented at trial did not establish Kind's guilt beyond a reasonable doubt.

{¶13} In his sole assignment of error, Kind contends that his having weapons while under disability conviction is against the manifest weight of the evidence.

{¶14} A manifest weight challenge attacks the credibility of the evidence presented and questions whether the state met its burden of persuasion at trial. *State v. Whitsett*, 8th Dist.

Cuyahoga No. 101182, 2014-Ohio-4933, ¶ 26, citing *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). Because it is a broader review, a reviewing court may determine that a judgment of a trial court is sustained by sufficient evidence, but nevertheless conclude that the judgment is against the weight of the evidence. *Id.*, citing *State v. Robinson*, 162 Ohio St. 486, 487, 124 N.E.2d 148 (1955).

{¶15} "When considering an appellant's claim that a conviction is against the manifest weight of the evidence, the court of appeals sits as a 'thirteenth juror' and may disagree with the factfinder's resolution of conflicting testimony." *Thompkins* at *id.*, citing *Tibbs v. Florida*, 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). The reviewing court must examine the entire record, weigh the evidence and all reasonable inferences, consider the witnesses' credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Thompkins* at *id.*, citing *State v. Martin*, 20 Ohio App.3d 172, 485 N.E.2d 717 (1st Dist.1983). In conducting such a review, this court remains mindful that the credibility of witnesses and the weight of the evidence are matters primarily for the trier of fact to assess. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraphs one and two of the syllabus. Reversal on manifest weight grounds is reserved for the "exceptional case in which the evidence weighs heavily against the conviction." *Thompkins* at *id.*, citing *Martin*.

{¶16} To convict Kind of having weapons while under disability, the trial court had to find beyond a reasonable doubt that Kind knowingly acquired, had, carried, or used a firearm and had a prior conviction for a felony offense of violence. *See* R.C. 2903.12.

{¶17} The trial court stated the following when giving its verdict:

I reviewed all of the evidence that was submitted to the jury, including the jury

instructions, and specifically the jury instruction dealing with eyewitness testimony, which is set out in the jury instructions under that heading, and I find that the state did carry its burden beyond a reasonable doubt and I find Mr. Kind guilty of having weapons while under disability.

I think it's worth a comment that in this situation we have two finders of fact. The jury made their findings. I made a finding that's different from theirs and perhaps — well, contrary to theirs, and I think I go back to the standards that we review certain matters at the presentation of the case where reasonable minds can come to more than one conclusion on the evidence presented. I think that's what occurred in this case.

As to the attempted murder and felonious assault, the jurors found him unanimously not guilty.

On having weapons while under disability, which specifically in this case would be the use of any firearm, I did find Mr. Kind guilty because I thought the eyewitness testimony was presented beyond a reasonable doubt to me. That is obviously different than what the jury reached with regard to the other counts in this case, but that is my determination as a finder of fact in the case.

{¶18} Kind challenges Carter's credibility and asserts that Carter and his brother conspired to blame the shooting on Kind. He also asserts that he is the victim of poor police work because the police were unable to determine exactly where the shooting took place, did not recover any physical evidence including the weapon, and did not locate surveillance video of the shooting.

{¶19} We do not find that this is the rare case where the trier of fact clearly lost its way. Carter testified that he initially did not tell the police about who shot him because he was in pain and thought he was going to die: "I ain't want to talk to nobody, I ain't want to say anything,

because I don't want to feel like what it felt like dying, so I kind of blanked out, just wanted to be all to myself."

{¶20} Detective James testified that it is not uncommon in this type of crime, where a shooting has occurred, that the police cannot initially identify a suspect due to a victim's inability to talk to the responding officers and the fact that the police do not typically interview victims while they are receiving medical treatment.

{¶21} Carter testified that he was walking out of a convenience store when he heard someone call to him. He then saw two men get out of a white van. The men approached him and he recognized Kind as one of the men. Kind asked Carter for a light, and Carter gave him his cigarette to use as a light. According to Carter, he saw that Kind was holding a gun, and Kind used that gun to shoot him.

{¶22} Carter testified that he told his brother Leroy who shot him. Leroy testified he told Detective James who shot his brother; Detective James corroborated this testimony. The police interviewed Carter while he was still in the hospital and Carter picked Kind out of the photo lineup. Although Kind alleges that Carter and his brother conspired to name Kind as the shooter, we find no evidence of this in the record and that theory is not one that Kind advanced during trial.

{¶23} Detective James further testified that he canvassed the area of the shooting to see if any nearby stores had surveillance cameras that might have caught the shooting, but he was unsuccessful. Detective James testified that no eyewitnesses to the shooting came forward, but, based on his experience, people in that area are "not interested in being witnesses to violent crimes" for fear of being labeled a "snitch."

{¶24} According to Detective James, it was not unusual that the police did not locate

shell casings or a weapon. The detective testified that criminals have learned to collect shell casings after firing their guns, or, if a revolver is used, then no shell casings are left behind. He further testified that police often do not recover the weapon used in a shooting because shooters do not leave their firearms on scene.

**{¶25}** Upon careful review of the record presented before us, we conclude that Kind's arguments do not render the state's witnesses' testimony not credible as a matter of law such that a reversal on manifest weight grounds is required. Accordingly, Kind's conviction for having a weapon while under disability is not against the manifest weight of the evidence, and we overrule Kind's sole assignment of error.

**{¶26}** Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
LARRY A. JONES, SR., JUDGE

MARY J. BOYLE, P.J., and
FRANK D. CELEBREZZE, JR., J., CONCUR