[Cite as *State v. Middleton*, 2018-Ohio-5038.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
No. 106824

STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

MICHAEL MIDDLETON

DEFENDANT-APPELLANT

JUDGMENT:
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-17-617927-A

BEFORE: Celebrezze, J., McCormack, P.J., and S. Gallagher, J.

RELEASED AND JOURNALIZED: December 13, 2018

**ATTORNEY FOR APPELLANT**

Ruth R. Fischbein-Cohen
3552 Severn Road, #613
Cleveland, Ohio 44118


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor
BY:    Kelly Needham
Assistant Prosecuting Attorney
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113

FRANK D. CELEBREZZE, JR., J.:

{¶1} Defendant-appellant, Michael Middleton ("appellant"), brings this appeal challenging his conviction and the trial court's sentence for domestic violence. Specifically, appellant argues that the trial court erred in its calculation of jail-time credit and that his conviction for domestic violence was against the manifest weight of the evidence. After a thorough review of the record and law, this court affirms.

### I. Factual and Procedural History

{¶2} Appellant and the victim ("J.G.") have been involved in an on-again-off-again romantic relationship dating back to 2011. They have one child together. Appellant previously lived at J.G.'s house from approximately January through May 2017. On May 29, 2017, appellant, who was no longer living at J.G.'s house, went to her house to drop off a cell phone belonging to J.G. and retrieve some of his personal belongings. Once at J.G.'s house, appellant and J.G. had a verbal argument regarding the cell phone. During this argument,

appellant confronted J.G. regarding the whereabouts of a personal belonging that was apparently missing. As appellant was leaving the home, the verbal argument turned physical, and a struggle occurred in the laundry room located just off of the home's attached garage. At some point during this struggle in the laundry room, appellant threw J.G. down to the ground, kicked her in her ribs, and purportedly struck J.G. over the head with a 9 mm handgun.

{¶3} On June 28, 2017, appellant was charged in a three-count indictment: Count 1, felonious assault, in violation of R.C. 2903.11(A)(2), a second-degree felony, with one- and three-year firearm specifications, and a forfeiture specification; Count 2, domestic violence, in violation of R.C. 2919.25(A), a first-degree misdemeanor, with a forfeiture specification; and Count 3, aggravated menacing, in violation of R.C. 2903.21(A), a first-degree misdemeanor, with a forfeiture specification.

{¶4} The matter ultimately proceeded to a jury trial. Appellant was found not guilty of the felonious assault and aggravated menacing counts. Appellant was found guilty of the domestic violence count and the underlying forfeiture specification.[1] The trial court held a sentencing hearing on January 18, 2018, and sentenced appellant to community control sanctions for a period of two years.

{¶5} Appellant filed the instant appeal challenging his conviction and the trial court's sentence. He assigns two errors for review:

I. It was error to deprive [appellant] of his earned credit for time served.

II. The jury erred in finding [appellant] guilty as against the manifest weight of the evidence.

---

[1] The parties had stipulated to the forfeiture specification in the event that appellant was found guilty on any of the three counts.

## II. Law and Analysis

### A. Jail-Time Credit

{¶6} In appellant's first assignment of error, he argues that the trial court erred when it deprived him of his earned jail-time credit.

{¶7} "Criminal defendants have a right to jail-time credit." *State v. Thompson*, 8th Dist. Cuyahoga No. 102326, 2015-Ohio-3882, ¶ 21, citing *State v. Alredge*, 7th Dist. Belmont No. 14 BE 52, 2015-Ohio-2586, ¶ 10. This right is codified within R.C. 2929.19. As this court noted in *Thompson*, "[i]n September 2012, R.C. 2929.19 was amended to 'impose certain duties on a trial court at the time of sentencing with respect to jail-time credit.'" *Id.*, quoting *State v. Fitzgerald*, 8th Dist. Cuyahoga No. 98723, 2013-Ohio-1893, ¶ 6 (Boyle, J., concurring). Thus, pursuant to R.C. 2929.19(B)(2)(f)(i),[2] if the trial court determines at the sentencing hearing that a prison term is necessary or required, the trial court shall

> [d]etermine, notify the offender of, and include in the sentencing entry the number of days that the offender has been confined for any reason arising out of the offense for which the offender is being sentenced and by which the department of rehabilitation and correction must reduce the stated prison term under section 2967.191 of the Revised Code.

{¶8} Moreover, as this court recently noted,

> It is the duty of the trial judge to determine the amount of jail-time credit to which a prisoner is entitled. *State ex rel. Rankin v. Ohio Adult Parole Auth.*, 98 Ohio St.3d 476, 2003-Ohio-2061, 786 N.E.2d 1286, ¶ 7. This information must be included in appellant's sentencing entry. *See* R.C. 2949.12; Ohio Adm.Code 5120-2-04(B). Further, since the provisions of R.C. 2967.191 are mandatory, the trial court's failure to properly calculate jail-time credit and include it in the body of the sentencing order is plain error. *State v. Miller*, 8th Dist. Cuyahoga Nos. 84540 and 84916, 2005-Ohio-1300, ¶ 10.

*State v. Williams*, 8th Dist. Cuyahoga No. 105903, 2018-Ohio-1297, ¶ 14.

---

[2] Appellant was sentenced under a prior version of this statute, and as of the date of appellant's sentence, this language was codified under R.C. 2929.19(B)(2)(g)(i).

{¶9} However, we note that the defendant in *Williams* was sentenced to a prison term. In the instant matter, appellant was not sentenced to a prison term, but was sentenced to a term of community control and a suspended jail sentence of 180 days. Further, we note that appellant did not file a motion for calculation of jail-time credit in the trial court. We find these two distinctions to be dispositive. Thus, if appellant were to violate the terms of his community control, and if the trial court were to impose the suspended jail sentence, at that time, appellant may file a motion with the trial court requesting a calculation of jail-time credit. Therefore, any argument for jail-time credit is speculative at the present time.

{¶10} Accordingly, appellant's first assignment of error is overruled.

## B. Manifest Weight

{¶11} In appellant's second assignment of error, he argues that his domestic violence conviction was against the manifest weight of the evidence. More specifically, appellant argues that the manifest weight of the evidence was not reliable because J.G. was not a credible witness.

{¶12} A manifest weight challenge questions whether the state met its burden of persuasion. *State v. Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, ¶ 13. A reviewing court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Thompkins*, 78 Ohio St.3d 380, 388, 678 N.E.2d 541 (1997). A conviction should be reversed as against the manifest weight of the evidence only in the most "exceptional case in which the evidence weighs heavily against the conviction." *Id*. To this end, "'[w]hen considering an appellant's claim that a conviction is against the manifest weight of the evidence, the court of appeals sits as a 'thirteenth juror' and may disagree with the

factfinder's resolution of conflicting testimony.'" *State v. Kind*, 8th Dist. Cuyahoga No. 106413, 2018-Ohio-3309, ¶ 15, quoting *Thompkins* at 387.

**{¶13}** We review credibility when considering the manifest weight of the evidence, however, we recognize that determinations regarding the credibility of witnesses and the weight of the testimony are primarily for the trier of fact. *State v. Bradley*, 8th Dist. Cuyahoga No. 97333, 2012-Ohio-2765, ¶ 14, citing *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967). Undeniably, the trier of fact is best suited "to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 24. The jury may recognize any inconsistencies and settle them accordingly, "'believ[ing] all, part, or none of a witness's testimony.'" *State v. Carter,* 8th Dist. Cuyahoga No. 106462, 2018-Ohio-3671, ¶ 71, quoting *State v. Raver*, 10th Dist. Franklin No. 02AP-604, 2003-Ohio-958, ¶ 21, citing *State v. Antill*, 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964).

**{¶14}** In the instant case, appellant was convicted of domestic violence in violation of R.C. 2919.25(A), which provides that no person shall knowingly cause or attempt to cause physical harm to a family or household member. "Physical harm" is defined as "any injury, illness, or other physiological impairment, regardless of its gravity or duration." R.C. 2901.01(A)(3). Pursuant to R.C. 2919.25(F)(1)(b), appellant is considered J.G.'s family member because he and J.G. have a child together. Appellant does not contest that J.G. was a family member; however, appellant appears to argue that the physical harm suffered by J.G. was not attributed to appellant because her testimony was not credible.

**{¶15}** In support of his argument, appellant directs this court's attention to past incidents, which according to appellant, demonstrate that J.G. lacks credibility. Appellant argues, and

testified to at trial, that in one particular incident, J.G. broke appellant's vehicle's windshield with a baseball bat. Additionally, J.G. attacked appellant with pepper spray on two separate occasions, one occurring after the May 29, 2017 incident. Appellant also points to various false police reports that J.G. has filed in retaliation for their ongoing feud.

{¶16} Appellant further argues that J.G. lacks credibility because DNA evidence did not corroborate J.G.'s testimony. In particular, J.G. testified that appellant struck her in the head with the handgun during the physical altercation in the laundry room. As part of the state's case, a DNA analyst testified at trial as a DNA expert. The DNA expert testified that the handgun and the magazine were swabbed for DNA. With regards to the handgun, swabs were taken from the grip trigger, the back end of the slide of the gun, the barrel, and the front end of the slide. These swabs were tested for DNA.

{¶17} With regards to the swabs from the grip trigger and swabs from the back end of the slide of the gun, there "contained a mixture of three unknown contributors" of DNA. (Tr. 367-368.) The DNA expert testified that "due to insufficient genetic information, [DNA] match support for [J.G. was] inconclusive" as to the grip trigger and back end of the slide of the handgun. (Tr. 369.) With regards to the swabs from the barrel and front end of the slide of the gun, the DNA expert testified that there also existed "a mixture of three unknown contributors and no statistical support for a match was identified between [those swabs] and [J.G.]" (Tr. 370.)

{¶18} First, with regards to the DNA expert testimony, we note that this particular evidence was presented in support of the felonious assault count and in support of the accompanying firearm specifications on all three counts charged in the indictment. We note that the jury found appellant not guilty of these charges and, as such, we can conclude that the jury

found the DNA expert's testimony was unsupported by the evidence. Thus, we find no merit to appellant's DNA arguments as it pertains to demonstrating that J.G. lacks credibility as to her account relative to the domestic violence count.

{¶19} In the instant case, J.G. testified that appellant came over to her house to return a cell phone that he had taken from J.G. without her permission. A verbal argument ensued that lasted approximately 30 minutes. J.G. insisted that appellant return the phone and at some point, appellant began searching for a personal belonging, an Amazon firestick.[3] Appellant then asked J.G. the whereabouts of his firestick. J.G. stated that she was unaware of its whereabouts. J.G. then testified that appellant continued to press her about the firestick and at one point grabbed her, took his 9 mm handgun out and threatened her with the handgun.

{¶20} Thereafter, appellant and J.G. continued to argue in the laundry room. J.G. testified that appellant grabbed her by the arms, a struggle ensued, and appellant threw J.G. down to the floor. J.G. stated that as she lay on the laundry room floor, appellant kicked her in the ribs, and struck her on the head with the 9 mm handgun. Apparently, the cell phone that belonged to J.G. fell out of appellant's pants pocket and J.G. stated that she kicked the cell phone underneath the washing machine in an attempt to ensure that appellant did not leave the residence with it. After the physical altercation in the laundry room, J.G. testified that appellant left her residence and she called 911.

{¶21} Responding officers observed J.G.'s injuries and accompanied J.G. to the police station in an effort to better photograph her injuries. Officers observed a scratch on one of J.G.'s elbows, a scrape on the other elbow, and bruising on the underside of J.G.'s upper arm.

---

[3] A device used to access various streaming services' applications through a television.

In addition, officers observed a portion of J.G.'s toenail that was torn off and observed a bump on the back of J.G.'s head.    One of the responding officers testified that

> [J.G.] claimed that at some point during the struggle between herself and [appellant] that a phone had fallen out of his pocket and onto the floor, and during the struggle she was able to kick it underneath her washing machine in order to keep him from getting at it.    So I was able to pull back the washing machine and help her retrieve the phone from underneath it.

(Tr. 383-384.)    Thus, the responding officers' testimony corroborated J.G.'s testimony regarding the injuries she sustained.

{¶22} Responding officers further testified that J.G. returned to the police station the following day and additional photos were taken of her injuries at that time.    Additional bruising was observed and the bruising appeared darker.    Also, the bump on the back of J.G.'s head was larger than it was the previous day.

{¶23} In our review of the record, we note that there were stark differences between J.G.'s testimony and appellant's testimony.    In sum, appellant's testimony differs with J.G.'s testimony in regards to the cause of the verbal argument, the parties' living arrangement, the physical altercation, and whether appellant was given permission to use the cell phone.    For instance, J.G. testified that during the period of January 2017 through the incident on May 29, 2017, appellant was living in J.G.'s house.    However, appellant testified that he was living at J.G.'s home during that time frame because J.G. was incarcerated and appellant was watching their daughter.    Appellant further testified that he and J.G. only resided at J.G.'s house together for approximately one week after J.G. was released from jail.

{¶24} We note that, regardless of whether or not the jurors did or did not believe the testimony regarding any of these other incidents appellant argues demonstrate J.G.'s lack of credibility, "a conviction is not against the manifest weight of the evidence solely because the

jury heard inconsistent or contradictory testimony." *State v. Rudd*, 8th Dist. Cuyahoga No. 102754, 2016-Ohio-106, ¶ 72, citing *State v. Wade*, 8th Dist. Cuyahoga No. 90029, 2008-Ohio-4574, ¶ 38. We must again stress that "the decision whether, and to what extent, to credit the testimony of a particular witness is within the peculiar competence of the fact-finder, who has seen and heard the witness." *State v. Johnson*, 8th Dist. Cuyahoga No. 99822, 2014-Ohio-494, ¶ 54. "'Because the factfinder * * * has the opportunity to see and hear the witnesses, the cautious exercise of the discretionary power of a court of appeals to find that a judgment is against the manifest weight of the evidence requires that substantial deference be extended to the factfinder's determinations of credibility.'" *State v. Robinson*, 8th Dist. Cuyahoga No. 99290, 2013-Ohio-4375, ¶ 56, quoting *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 Ohio App. LEXIS 3709 (Aug. 22, 1997).

{¶25} After reviewing the record and deferring to the trier of fact's credibility assessment, we are unable to conclude that the trier of fact lost its way and created a manifest injustice. The jury, as the trier of fact was in the best position to weigh the credibility of the witnesses and was free to believe all or part of J.G.'s testimony regarding appellant's conduct. Seemingly, because the jury returned a not guilty verdict on the felonious assault and aggravated menacing counts as charged in the indictment, the jury did not believe some of J.G.'s testimony and the accompanying DNA expert testimony. Appellant's conviction is not against the manifest weight of the evidence simply because the jury chose to believe portions of J.G.'s version of the events rather than appellant's proffered version of the events. *See State v. Nelson*, 2017-Ohio-5568, 93 N.E.3d 472, ¶ 58 (8th Dist.). Based on the facts in the record before this court, we cannot say this is the exceptional case that requires reversal under the manifest weight standard.

{¶26} Accordingly, appellant's second assignment of error is overruled.

### III. Conclusion

{¶27} Appellant's conviction was not against the manifest weight of the evidence because the jury, as the finder of fact, was in the best position to assess the credibility of J.G.'s testimony. Furthermore, because appellant was sentenced to community control sanctions, he was not entitled to a calculation of jail-time credit.

{¶28} Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


FRANK D. CELEBREZZE, JR., JUDGE

TIM McCORMACK, P.J., and
SEAN C. GALLAGHER, J., CONCUR