[Cite as *State v. Ferguson*, 2020-Ohio-3119.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 108603 |
| v. | : | |
| DELONTE FERGUSON, | : | |
| Defendant-Appellant. | : | |

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** May 28, 2020

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-18-629296-A

***Appearances:***

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Kevin R. Filiatraut, Assistant Prosecuting Attorney, *for appellee.*

Stephen L. Miles, *for appellant.*

MARY EILEEN KILBANE, J.:

{¶ 1} Defendant-appellant, Delonte Ferguson ("Ferguson"), appeals his conviction for having weapons while under disability. He raises a single assignment of error arguing his conviction is against the manifest weight of the evidence. For the following reasons, we affirm the decision of the trial court.

**Procedural History**

{¶ 2}  Ferguson was indicted on June 5, 2018, in a five-count indictment for the killing of Darrell Hill: Counts 1 and 2 were both first-degree murder counts in violation of R.C. 2903.02 — each count included one-year firearm specifications pursuant to R.C. 2941.141 as well as a three-year firearm specification pursuant to R.C. 2941.145; Count 3, felonious assault, a second-degree felony — which included a one-year firearm specification pursuant to R.C. 2941.141 as well as a three-year firearm specification pursuant to R.C. 2941.145; Count 4, discharge of a firearm on or near prohibited premises, a first-degree felony pursuant to R.C. 2923.162(A)(3) — which included a one-year firearm specification pursuant to R.C. 2941.141 as well as a three-year firearm specification pursuant to R.C. 2941.145.  Ferguson was also charged with Count 5, having a weapon while under disability ("HWWUD"), a third-degree felony.

{¶ 3}  Ferguson exercised his right to a trial by jury on Counts 1-4; he elected to try Count 5, the HWWUD charge, to the bench.

{¶ 4}  The matter proceeded to trial on all counts, at which the following evidence was adduced.

**The Trial**

{¶ 5}  On May 28, 2018, J.P. drove to her friend R.W.'s house on Walton Avenue.  J.P. arrived at the Walton Avenue home around 8:00 p.m. and saw R.W. walking with A.W., another one of their friends.

{¶ 6} R.W. lives with her mother, little brother, and Ferguson, her mother's boyfriend. Both A.W. and J.P. were familiar with Ferguson, having spoken with him before, and knew him as "Lupe."

{¶ 7} After picking up R.W. and A.W., J.P. drove the three to McDonald's and Rally's to pick up food. They then returned to R.W.'s house where R.W.'s little brother joined them; they all ate in the car together.

{¶ 8} Around 10:00 p.m., R.W. left to go put her brother to bed. J.P. and A.W. remained in the car hanging out. Several minutes later, the two heard gunshots nearby. J.P. testified that she heard two gunshots, while A.W. testified it could have been four shots. J.P. was in the driver's seat; she testified that she immediately became terrified and that A.W. urged her to leave quickly. J.P. turned off of Walton onto West 32nd Street, proceeding towards Clark Avenue and Tony's Market at a high rate of speed. Both girls testified that they know now that they were driving towards where the shots had come from, but at the time they were both scared. J.P.'s mother also lives in the direction they were driving.

{¶ 9} As the girls were driving down West 32nd, both girls saw Ferguson walking towards his home on Walton Avenue. J.P. stated that she slowed the vehicle down to see if Ferguson was alright, because she was worried about him, and then "me and [A.W.] saw the gun in his hand, and he stared at us and we stared at him, and I just kept going." Tr. 214.

{¶ 10} J.P. described the gun as being "silver at the top, kind of a dark color on the bottom half." *Id.* After seeing Ferguson, J.P. accelerated, stating that she

wanted to get back to R.W.'s house to make sure their friend would be okay. As they drove rapidly down West 32nd, neither saw anyone else on the street.

{¶ 11} Once they turned back onto Walton a few moments later, the girls paused briefly in front of R.W.'s house to see if they could hear anything unusual. The girls did not see anyone on the street or hear anything unusual, and noted that there were some lights on in R.W.'s house and in the house of Ferguson's mother, who lived next door to R.W.

{¶ 12} J.P. then pulled out from the house and turned onto West 32nd, proceeding down the street intending to travel to J.P.'s mother's home. This time, once they turned onto West 32nd, they saw a body in front of Tony's Market, with people gathered around. The girls did not stop, but instead drove towards J.P.'s house. As the girls drove, they spotted a police car; J.P. flashed her high beams and blew her horn to get the officer's attention. They let the police know that they had seen a body outside Tony's Market.

{¶ 13} After speaking with the officers, the girls drove to J.P.'s house. Once there, J.P.'s mother told the girls that they should tell the police who they had seen; she accompanied the two back to West 32nd to speak with the police again.

{¶ 14} When speaking to police that evening, J.P. described Ferguson as wearing a white T-shirt and baggy jeans. However, at trial, J.P. repeatedly stated that she saw Ferguson that evening wearing a red zipper hoodie. She was asked numerous times on cross-examination to confirm that was what she saw Ferguson wearing.

{¶ 15} J.P. did the majority of the talking with police at the scene, with A.W. only speaking up to say that she agreed with what J.P. said. At trial, A.W. did recall some small differences but mostly confirmed J.P.'s testimony.

{¶ 16} In particular, A.W. testified that they did not slow down when they saw Ferguson walking towards Walton, as J.P. had stated, but instead that J.P. was driving very quickly because the two girls were concerned for their safety. Otherwise, she confirmed everything that J.P. had observed.

{¶ 17} A.W. admitted on cross-examination that, during a pretrial meeting, she had informed the prosecutor in this case that she did not see Ferguson with a weapon. However, after some questioning by the prosecutor on redirect, she admitted that she had not wanted to testify and that she really had seen a weapon.

**The search for a weapon**

{¶ 18} Following the identification of Ferguson by the two girls at the scene, at least twenty minutes passed before officers proceeded to Walton Avenue. When officers arrived, they learned Ferguson was at his mother's house. Ferguson did not immediately answer the door when officers knocked; he eventually came to the door shirtless and sweating. He was cordial with officers, though visibly intoxicated.

{¶ 19} Following his arrest, the Cuyahoga County Medical Examiner's Office conducted a gunshot residue test on Ferguson, which resulted in a negative finding. Nor was Ferguson's DNA found on the cartridge casings found at the scene.

{¶ 20} Officers conducted extensive searches of Ferguson's house, Ferguson's mother's house, and a third home near the other two. No firearms or

ammunition were found. However, following a cold stand where A.W. and J.P. identified, from a distance, Ferguson as the man they had seen, officers took him into custody.

{¶ 21} At the conclusion of the trial, on April 25, 2019, the jury found Ferguson not guilty of counts 1-4. However, the trial court found Ferguson guilty of count 5 for HWWUD. The court sentenced Ferguson to 30-months' imprisonment on April 30, 2019. He provides a single assignment of error for our review.

## Assignment of Error

The appellant's conviction was against the manifest weight of the evidence.

## Manifest weight standard

{¶ 22} In our manifest weight review of a bench-trial verdict, we recognize that the trial court is serving as the factfinder:

> Accordingly, to warrant reversal from a bench trial under a manifest weight of the evidence claim, this court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether in resolving conflicts in evidence, the trial court clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered.

*State v. Bell*, 8th Dist. Cuyahoga No. 106842, 2019-Ohio-340, ¶ 41, citing *State v. Strickland*, 183 Ohio App.3d 602, 2009-Ohio-3906, 918 N.E.2d 170, ¶ 25 (8th Dist.). *See also State v. Kessler*, 8th Dist. Cuyahoga No. 93340, 2010-Ohio-2094, ¶ 13.

{¶ 23} A conviction should be reversed as against the manifest weight of the evidence only in the most "exceptional case in which the evidence weighs heavily against the conviction." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d

541 (1997). In contrast to a challenge based on sufficiency of the evidence, a manifest weight challenge attacks the credibility of the evidence presented and questions whether the state met its burden of persuasion at trial. *State v. Whitsett*, 8th Dist. Cuyahoga No. 101182, 2014-Ohio-4933, ¶ 26, citing *State v. Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, ¶ 13.

{¶ 24} In a manifest weight review, we sit as the thirteenth juror with the ability to disagree with the factfinder's resolution of the conflicting testimony. *Thompkins* at *id.* Therefore, under *Thompkins*, a reviewing court can still reweigh the evidence and reverse a lower court's holdings. *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, citing *Thompkins*.

{¶ 25} In this instance, we do not find that this is one of those exceptional cases where the evidence weighs heavily against the conviction. Having reviewed the evidence and the testimony of the witnesses, we find it credible that Ferguson was in possession of a firearm on May 28, 2018.

{¶ 26} We have recently decided a similar case where the defendant, acquitted by the jury of certain charges, but convicted by the court of an HWWUD charge, challenged that conviction on manifest weight grounds. *State v. Kind*, 8th Dist. Cuyahoga No. 106413, 2018-Ohio-3309.

{¶ 27} In *Kind*, a defendant was acquitted of attempted murder by the jury but found guilty by the trial court of HWWUD. The victim in that case was approached by two men outside of a gas station and was shot four times. He spotted Kind, whom he knew, with a gun before the two men approached, but, when

questioned by officers at the scene, stated that he did not know who shot him. However, at trial, the victim and his brother both identified the defendant as the person who had shot the victim. Despite these seeming inconsistencies, the trial court noted that the victim's testimony was consistent as to Kind having a weapon. As a result, the trial court convicted him of the HWWUD charge.

{¶ 28} *Kind* is almost directly on point. In this case, we have two witnesses who both identified Ferguson, a person they knew well. Both witnesses testified that they saw Ferguson with a weapon. True, there are some inconsistencies within their testimony — like what Ferguson was wearing the night they saw him. But we find that both witnesses are otherwise credible as to the essential fact: that Ferguson had a weapon.

{¶ 29} While we do not defer to the trial court, we are conscious that the court also found the two witnesses to be credible:

> I was here, I watched the trial, obviously the journal entry shows the disability in and of itself and I found the witnesses who said he had a gun very credible. They did not want to be here. Their alliance was really to the defendant and his family, but despite that, they came in and testified that, in fact, they saw him unequivocally with a gun.

{¶ 30} Instead of focusing on two credible witnesses, Ferguson argues that we should focus on the fact that no weapon was found. However, we do not find that fact inconsistent with a conviction in this case. There is ample evidence that Ferguson took his time before speaking to police. He came to the door shirtless and sweating minutes after officers knocked. He had plenty of time to hide the weapon.

**{¶ 31}** This is not one of those exceptional cases where the weight of the evidence is against the conviction. As a result, we affirm the decision of the trial court.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MARY EILEEN KILBANE, JUDGE

PATRICIA ANN BLACKMON, P.J., and
LARRY A. JONES, SR., J., CONCUR