[Cite as *Cleveland v. Wilks*, 2021-Ohio-2680.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

CITY OF CLEVELAND,                       :

    Plaintiff-Appellee,              :

                                   No. 109975

    v.                               :

BARUCH WILKS,                            :

    Defendant-Appellant.             :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** August 5, 2021

---

Criminal Appeal from the Cleveland Municipal Court
Case No. 20 CRB 003329

---

### *Appearances:*

Barbara A. Langhenry, Cleveland Director of Law, Aqueelah Jordan, Chief Prosecutor, and Stephen F. Gorczyca, Assistant City Prosecutor, *for appellee.*

Rick L. Ferrara, *for appellant.*

ANITA LASTER MAYS, P.J.:

{¶ 1} Plaintiff-appellant Baruch Wilks appeals his conviction for disorderly conduct: intoxication. We affirm the trial court's judgment.

## I.  Facts and Procedural History

{¶ 2} On March 10, 2020, 21-year-old Wilks was cited for disorderly conduct due to public intoxication under Cleveland Codified Ordinances ("C.C.O.") 605.03(B)(2), a minor misdemeanor.  (Tr. 34.)  The case was arraigned on July 7, 2020, due to the pandemic emergency.[1]  A bench trial was conducted on August 27, 2020.  Wilks appeared pro se.  Wilks was convicted and received a $150 fine and ordered to pay court costs.  Execution was stayed pending appeal.

{¶ 3} Wilks, currently represented by counsel, appeals.

## II.  Assignments of Error

{¶ 4} Wilks poses two assigned errors:

I.   Insufficient evidence supported appellant's conviction for disorderly conduct; intoxication.

II.  The manifest weight of the evidence did not support appellant's conviction for disorderly conduct; intoxication.

## III.  Discussion

{¶ 5} We combine the assigned errors for ease of analysis.

---

[1] Am. Sub. H.B. 197 applied to toll statutory time limits.

Am. Sub. H.B. 197, approved and effective March 27, 2020, and made retroactive to March 9, 2020, was enacted pursuant to Article II, Section 1d, of the Ohio Constitution, as "an emergency measure necessary for the immediate preservation of the public peace, health, and safety" considering the Covid-19 pandemic.  Section 40.  Section 22. (A) of the Act tolled time for a broad range of enumerated proceedings and deadlines which were otherwise "set to expire between March 9, 2020, and July 30, 2020[.]" Relevant to this case * * * [is] subsection (10) which relates to "[a]ny other criminal, civil, or administrative time limitation under the Revised Code."

*In re K.R.*, 9th Dist. Summit No. 29815, 2021-Ohio-495, ¶ 13.

## A. Standard of Review

**{¶ 6}** "A challenge to the sufficiency of the evidence supporting a conviction requires a determination of whether the state met its burden of production." *State v. Hunter*, 8th Dist. Cuyahoga No. 86048, 2006-Ohio-20, ¶ 41, citing *State v. Thompkins*, 78 Ohio St.3d 380, 390, 678 N.E.2d 541 (1997). When reviewing sufficiency of the evidence, an appellate court must determine "'whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, 818 N.E.2d 229, ¶ 77, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. In a sufficiency inquiry, an appellate court does not assess whether the evidence is to be believed but whether, if believed, the evidence admitted at trial supported the conviction beyond a reasonable doubt. *State v. Starks*, 8th Dist. Cuyahoga No. 91682, 2009-Ohio-3375, ¶ 25; *Jenks* at paragraph two of the syllabus.

**{¶ 7}** "While the test for sufficiency requires a determination of whether the prosecution has met its burden of production at trial, a manifest weight challenge questions whether the prosecution has met its burden of persuasion." *State v. Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, ¶ 13, citing *Thompkins* at 390. "When considering a manifest weight claim, a reviewing court must examine the entire record, weigh the evidence, and consider the credibility of witnesses." *Id.*, citing *State v. Thomas*, 70 Ohio St.2d 79, 80, 434 N.E.2d 1356 (1982).

**{¶ 8}** In reviewing the manifest weight of evidence when there is a bench trial, we recognize that the trial court is serving as the factfinder:

> "Accordingly, to warrant reversal from a bench trial under a manifest weight of the evidence claim, this court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether in resolving conflicts in evidence, the trial court clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered."

*State v. Ferguson*, 8th Dist. Cuyahoga No. 108603, 2020-Ohio-3119, ¶ 22, quoting *State v. Bell*, 8th Dist. Cuyahoga No. 106842, 2019-Ohio-340, ¶ 41.

## B. Analysis

**{¶ 9}** Wilks was convicted of violating C.C.O. Section 605.03, specifically 605.03(b)(2):

> (b)    No person, while voluntarily intoxicated shall do either of the following:
>
> * * *
>
> > (2)    Engage in conduct or create a condition which presents a risk of physical harm to himself or another, or to the property of another.
>
> * * *
>
> (d)   When to an ordinary observer a person appears to be intoxicated, it is probable cause to believe such person is voluntarily intoxicated for purposes of division (b) of this section.
>
> (e)    Whoever violates this section is guilty of disorderly conduct, a minor misdemeanor. If the offender persists in disorderly conduct after reasonable warning or request to desist, disorderly conduct is a misdemeanor of the first degree.

{¶ 10} Cleveland Police Officer Antonio Muniz ("Officer Muniz") testified that at approximately 8:00 p.m. on the night of March 10, 2020, Muniz and his partner Officer Delvecchio responded to a dispatch call that an intoxicated man had vomited in an Uber vehicle, coughed on the driver, and was now walking in the area of East 24th and Community College Avenue. The information was confirmed by the Uber driver at the scene whose conversation was recorded by Officer Delvecchio's bodycam. The driver also told them that he had to go clean out his car and promptly drove off.

{¶ 11} The officers drove around the area and quickly encountered Wilks. Officer Muniz personally observed that Wilks was intoxicated as they talked. Wilks initially began to walk away but the officers followed. Officer Muniz contacted EMS out of concern for Wilks's security, particularly in light of his apparent impairment and due to crime in the area. EMS arrived but initially refused to transport. After further discussion and interaction with Wilks, EMS transported Wilks to nearby St. Vincent Charity Medical Center.

{¶ 12} Wilks asked Officer Muniz a series of questions to determine what the officer could recall about the night of the incident.

| Wilks: | Do you recall, when you approached me the first time, that I was standing on the sidewalk? |
| --- | --- |
| Officer Muniz: | I don't remember completely. |
| Wilks: | Okay. Do you recall asking me that — not asking, telling me that the Uber driver said that I threw up in his car? |
| Officer Muniz: | I don't remember. |

| Wilks: | Something — do you recall that I answered no, that I did not throw up in his car? |
|---|---|
| Officer Muniz: | I don't remember. |
| Wilks: | Do you recall the thing you said, well, we called EMS for you. They're going to check you out? |
| Officer Muniz: | I don't recall saying that but I'm sure I did because of the fact, again — |
| City: | We'll stipulate that EMS came to the scene. |

(Tr. 16-17.)

{¶ 13} Officer Muniz did not recall the officers' conversation with EMS about what transpired prior to the EMS arrival but remembered that he was concerned about Wilks's health. Wilks initially refused transport. Officer Muniz did recall that Wilks walked away and the officers followed because Wilks "was in no condition to be walking in the public street." (Tr. 19.) The officer continued, "You were being reckless. You were in the middle of the street. The way you were walking. And then eventually, when I tried talking to you again, you just crossed the [street], on College [Avenue], to the bus stop." (Tr. 20.) Officer Muniz could not recall how far away he was from Wilks at that point but did recall that Wilks stumbled as he walked. EMS followed, and Wilks was ultimately taken to the hospital due to intoxication.

{¶ 14} Wilks produced an email from Uber that indicated a charge of $17.02 to clean the car. The email indicated that a cleaning fee of $20 is charged for a small interior mess that requires vacuuming or simple cleaning and that $80 is charged for "body fluid messes." (Tr. 33.) Wilks argued that the email proved that he did not throw up in the car. Wilks also cited excerpts of case law from various

jurisdictions in the United States to the effect that merely being intoxicated is not enough and that some affirmative conduct is required for conviction. (Tr. 35.)

{¶ 15} Wilks's testimony is somewhat repetitive and at some points difficult to follow. He indicated that the Uber driver, who Wilks cited by his first name, had changed his story and that Wilks did not get sick in the Uber. The driver was not subpoenaed as a witness.

{¶ 16} In response to the trial court's inquiry of what Wilks wanted to share about what happened, Wilks said:

> I was on the street. I did not want to change my Uber ride, because I would rather him (inaudible) the ride because he kicked me out of his car. But at the point that I walked away, which is legal to walk away from a conversation with an officer. I didn't run. I walked. I called another Uber, which again only goes to show that —
>
> * * *
>
> Being drunk is not enough. It has to be an action [sic].

(Tr. 42-43.)

{¶ 17} Wilks did not deny that he was drunk. Instead, Wilks maintained that he did not "[e]ngage in conduct or create a condition which presents a risk of physical harm to himself or another, or to the property of another" because he did not throw up in the Uber. C.C.O. Section 650.03(b)(2).

{¶ 18} The dispatch recording confirms the call from the Uber driver that an intoxicated male passenger threw up in the car. The Uber driver can be overhead on the bodycam audio telling the officers that a male passenger vomited in the car

and coughed on the driver, that the passenger was still in the immediate area, and that the driver left the scene to clean his car.

{¶ 19} The bodycam video depicts the officers expressing their concern about leaving Wilks alone in the statistically high crime area. Wilks's speech and demeanor indicates intoxication. Wilks does not deny that he was in the Uber or that he had been drinking.

{¶ 20} The officers approached and advised Wilks that he was not in trouble and that the Uber driver said Wilks threw up in the car and coughed in his face. Wilks, whose speech is sometimes clear and sometimes slurred, said "I did do that." Officer Muniz responds, "you did that?" Wilks shakes his head and says "no." The stumbling and staggering behavior testified to by Officer Muniz is not clearly supported in Officer Delvecchio's bodycam who was not walking directly with Officer Muniz.

{¶ 21} Wilks was carefully handcuffed and, in spite of his verbally abusive and rambling conversation, taken to the hospital without incident. Though initially handcuffed and later cuffed to the hospital bed, the handcuffs were removed at Wilks's request while he was attended to by hospital personnel. He insisted several times that he would not be cooperative unless his blood pressure was taken and he was provided with the results.

{¶ 22} In the room where Wilks was being attended, police can be overheard telling the attending nurse that Wilks was in an Uber and threw up. Wilks interjected, "did I throw up in the Uber?" The officer responded, "yeah." Wilks

replied, "oh sh*t, that's really rough." The nurse inquired whether Uber billed for that and Wilks stated, "are you kidding me, they bill you a thousand times." Police were with Wilks at the scene and the hospital for approximately 40 minutes. Wilks can be heard speaking loudly in the background throughout.

{¶ 23} Wilks maintains that the officers did not see evidence in the Uber that indicated Wilks had thrown up. However, it is well established that the elements of an offense may be proven by direct evidence, circumstantial evidence, or both. *See State v. Durr*, 58 Ohio St.3d 86, 568 N.E.2d 674 (1991). Direct evidence exists when "a witness testifies about a matter within the witness's personal knowledge such that the trier of fact is not required to draw an inference from the evidence to the proposition that it is offered to establish." *State v. Cassano*, 8th Dist. Cuyahoga No. 97228, 2012-Ohio-4047, ¶ 13.

{¶ 24} Circumstantial evidence, on the other hand, is evidence that requires "the drawing of inferences that are reasonably permitted by the evidence." *Id. See also State v. Hartman*, 8th Dist. Cuyahoga No. 90284, 2008-Ohio-3683, ¶ 37 ("Circumstantial evidence is the proof of facts by direct evidence from which the trier of fact may infer or derive by reasoning other facts in accordance with the common experience of mankind.").

{¶ 25} Circumstantial and direct evidence are of equal evidentiary value. *State v. Santiago*, 8th Dist. Cuyahoga No. 95333, 2011-Ohio-1691, ¶ 12. "Although there are obvious differences between direct and circumstantial evidence, those differences are irrelevant to the probative value of the evidence." *Cassano* at ¶ 13,

citing *State v. Treesh*, 90 Ohio St.3d 460, 485, 739 N.E.2d 749 (2001). In some cases, circumstantial evidence may be "'more certain, satisfying and persuasive than direct evidence.'" *State v. Lott*, 51 Ohio St.3d at 167, 555 N.E.2d 293, quoting *Michalic v. Cleveland Tankers, Inc.*, 364 U.S. 325, 330, 81 S.Ct. 6, 5 L.Ed.2d 20 (1960).

{¶ 26} We also consider the city's position that the Uber incident was not the only affirmative act and that Wilks's jaywalking and drunkenly stumbling across the public street to the bus stop constitutes an additional affirmative act. The conduct took place at night and posed a risk to others.

{¶ 27} We find that viewing the evidence in a light most favorable to the prosecution, a "'rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *Leonard,* 104 Ohio St.3d 54, 2004-Ohio-6235, 818 N.E.2d 229, ¶ 77, quoting *Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. Thus, we find that the evidence was sufficient in this case.

{¶ 28} In addition, based on our review of the entire record, weighing the evidence and all reasonable inferences, considering the credibility of witnesses and determining whether in resolving conflicts in the evidence, we find that the judgment is affirmed. We cannot say that "the trial court clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered." *Bell*, 8th Dist. Cuyahoga No. 106842, 2019-Ohio-340, at ¶ 41.

**{¶ 29}** The trial court's judgment is affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cleveland Municipal Court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
ANITA LASTER MAYS, PRESIDING JUDGE

EILEEN A. GALLAGHER, J., and
MICHELLE J. SHEEHAN, J., CONCUR