JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant, Libra Badran ("Badran"), appeals her conviction. Finding no merit to the appeal, we affirm.
 {¶ 2} In 2007, Badran was charged with trafficking in or illegally obtaining food stamps and tampering with government records. Just before trial was to commence, appointed counsel indicated that Badran had contacted an attorney because he and Badran did "not see eye to eye as to the facts." The trial court questioned Badran as to her concerns with her appointed counsel. The court allowed a brief recess for counsel to discuss the matter with his client, and then the jury trial began on October 3, 2007. Trial concluded on October 5, 2007. The following evidence was offered at trial.
 {¶ 3} Yvette James ("James") of the Cuyahoga County Department of Job and Family Services ("JFS") testified that she interviewed Badran in September 2003 to determine if Badran was still eligible for public assistance. At the time, Badran was receiving aid for herself and her four children. James testified that she explained to Badran that she must report any changes in her household as to size or income and inquired whether there had been any changes. James testified that Badran told her that there had not been any changes, when in fact, Badran had lost legal custody of her children.
 {¶ 4} James testified that JFS continued to provide benefits to Badran until April 2007. Amy Goepfert ("Goepfert"), an investigator with JFS, testified that she discovered that Badran had lost custody of her children in August 2003, and *Page 4 
therefore, Badran was no longer eligible to receive aid. Goepfert testified that the amount of overpayment was $6,525.
 {¶ 5} Badran admitted that she lost custody of her children in August 2003 and never regained custody. She testified that during the period in question, the children either lived with her or her mother. She admitted that she never informed JFS that she lost custody of her children, but thought that she only lost custody for thirty days, and was not aware that her mother had legal custody of the children. Badran also conceded that she knew that she was required to report all changes in her household to the county agency.
 {¶ 6} The jury convicted Badran of both counts and she was sentenced to community control sanctions and ordered to make restitution to the county.
 {¶ 7} Badran appeals, raising two assignments of error for our review. In the first assignment of error, she argues that she was deprived of her right to counsel when the court failed to investigate her claim that she wished to retain other counsel.
 {¶ 8} When seeking to discharge a court-appointed attorney, a defendant bears the burden of showing that the attorney-client relationship has broken down to such a degree as to jeopardize her right to effective assistance of counsel. State v. Henness (1997),79 Ohio St.3d 53, 65, 679 N.E.2d 686, 697, certiorari denied (1997),522 U.S. 971, 118 S.Ct. 422, 139 L.Ed.2d 323, citing State v. Coleman (1988),37 Ohio St.3d 286, 525 N.E.2d 792, paragraph four of the syllabus, certiorari denied (1988), 488 U.S. 900, 109 S.Ct. 250, 102 L.Ed.2d 238. When an indigent *Page 5 
defendant questions the effectiveness of assigned counsel, the trial court must inquire into the complaint and make the inquiry part of the record. State v. King (1995), 104 Ohio App.3d 434, 437, 662 N.E.2d 389,390-391, citing State v. Prater (1990), 71 Ohio App.3d 78, 82,593 N.E.2d 44, 46, and State v. Deal (1969), 17 Ohio St.2d 17,244 N.E.2d 742 at syllabus. However, in order to necessitate such an inquiry, the defendant must announce grounds for appointment of new counsel that are sufficiently specific to trigger the duty of further investigation. Once specific allegations have been made, the failure to inquire into such allegations constitutes error as a matter of law. State v. Carter
(1998), 128 Ohio App.3d 419, 423, 715 N.E.2d 223, 225.
 {¶ 9} As to Badran's request to retain new counsel just prior to the commencement of trial:
 {¶ 10} "There exist points at which the process of administering justice must be balanced with the defendant's right to counsel. The right to have counsel assigned by the court does not impose on the court a duty to allow the accused to choose his own counsel, for the selection of counsel is within the sound discretion of the court. Thurston v.Maxwell (1965), 3 Ohio St.2d 92, 209 N.E.2d 204. *** [W]hile `the Constitution guarantees indigent defendants competent appointed counsel at trial and on direct appeal, it does not guarantee counsel of choice.'" State v. Smith (Sept. 14, 2000), Cuyahoga App. No. 76998, quoting State v. Edsall (1996), 113 Ohio App.3d 337, 340-341,680 N.E.2d 1256, 1258, appeal dismissed (1997), *Page 6 77 Ohio St.3d 1514, 674 N.E.2d 370.
 {¶ 11} We have found that "the refusal to replace an appointed attorney is not an abuse of discretion when the request is made at the last minute prior to trial and adequate reasons for the request are not set out in the record." Smith, quoting State v. Harper (1988),47 Ohio App.3d 109, 113, 547 N.E.2d 395, 399.
 {¶ 12} Badran argues that the trial court abused its discretion when it did not inquire as to the whereabouts of Badran's retained counsel. Just before trial commenced, Badran's counsel told the court that he and Badran did "not see eye to eye as to the facts," and he was concerned about communicating with Badran. He also stated that Badran had told him that "she secured some help from family members to retain [private counsel]" and Badran had contacted an attorney that day. The trial court proceeded to question Badran and informed her that she had two options: to enter a plea or to go to trial. The record reflects that no private attorney had filed an appearance in the case or contacted the court. The trial court then allowed Badran time to confer with her appointed counsel. After a recess, the trial began without any further objection to appointed counsel's representation.
 {¶ 13} In order to justify the discharge of court-appointed counsel, a defendant must show "good cause, such as a conflict of interest, a complete breakdown in communication, or an irreconcilable conflict which leads to an apparently unjust result." State v. Blankenship (1995),102 Ohio App.3d 534, 558, 657 N.E.2d 559, 574, citing State v. Pruitt
(1984), 18 Ohio App.3d 50, 57, 480 N.E.2d 499, 507-508. *Page 7 
Badran merely answered the court's questions with "yes" and did not elaborate further or even claim that she had problems with her assigned counsel. She also made no further objection once trial commenced.[1]
Even though the trial court could have questioned Badran further, we do not find that defense counsel's last-minute attempt to withdraw from the case based on an alleged communication barrier triggered the court's duty to further investigate counsel's claims.
 {¶ 14} Thus, because Badran never questioned the effectiveness of her assigned counsel, and there is no evidence that she had actually retained private counsel, we find no abuse of the court's discretion in its denial of Badran's request. The first assignment of error is overruled.
 {¶ 15} In the second assignment of error, Badran argues that she was deprived of her right to a fair trial when the State failed to disclose exculpatory evidence.
 {¶ 16} Crim. R. 16(B)(1)(f) requires the State, upon motion of the defendant before trial, to disclose to the defendant all known evidence "favorable to the defendant and material to either guilt or punishment." The State's suppression of evidence favorable to an accused, i.e., evidence that would tend to exculpate the defendant, violates due process where the evidence is material to either guilt or punishment, irrespective of the good faith or bad faith of the prosecution.Brady v. *Page 8 Maryland (1963), 373 U.S. 83, 87, 88, 83 S.Ct. 1194, 10 L.Ed.2d 215; see, also, State v. Johnston (1988), 39 Ohio St.3d 48, 60,529 N.E.2d 898.
 {¶ 17} Suppression of exculpatory evidence by the prosecution violates due process only where that evidence creates a reasonable doubt as to the guilt of the accused. Wagster v. Overberg (6th Cir. 1977),560 F.2d 735, 739. The mere possibility that the evidence might have helped the defense does not establish "materiality." Id. at 741.
 {¶ 18} The Ohio Supreme Court declared that "the key issue in a case where exculpatory evidence is alleged to have been withheld is whether the evidence is material." Johnston, at 60. The court noted that such evidence will be deemed material only if there is a "reasonable probability" that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. Id. at 61, quotingUnited States v. Bagley (1985), 473 U.S. 667, 105 S.Ct. 3375,87 L.Ed.2d 481; see, also, State v. Apanovitch (1995), 107 Ohio App.3d 82, 92,667 N.E.2d 1041. The Bagley court noted that a "reasonable probability" is one sufficient to undermine confidence in the outcome. Id. at 682; see, also, Apanovitch, at 92. Moreover, a reviewing court should consider the cumulative effect of all nondisclosures in determining whether reversal is required, as each piece of omitted evidence standing alone may not be sufficiently material to justify a new trial; however the net effect may warrant a new trial. Kyles v. Whitley (1995), 514 U.S. 419, 434,115 S.Ct. 1555, 131 L.Ed.2d 490. *Page 9 
 {¶ 19} During James' cross-examination, defense counsel asked her if she kept a log of her interview with Badran. James admitted that she had, and counsel requested to see the log. Counsel then approached the bench and asked the trial court for time to review the log, complaining that this was the first time he had seen it. The court instructed counsel to take his time reviewing the log. Counsel then asked for the log to be marked as an exhibit and proceeded to ask James questions about the log. The log was admitted into evidence.
 {¶ 20} Badran now argues that "relevant" evidence was withheld from discovery and that the material "clearly involves the benefits application and other information alleged to have formed the subject of [the] charges." Badran fails, however, to argue that the evidence was exculpatory or that there is a "reasonable probability" that, had the evidence been disclosed to the defense during discovery, the result of the proceeding would have been different.
 {¶ 21} Badran offers no support for her argument. Our review of the specific exhibit does not reveal anything exculpatory. Moreover, if an argument exists that can support this assignment of error, it is not this court's duty to root it out. State v. Carman, Cuyahoga App. No. 90512, 2008-Ohio-4368, citing Cardone v. Cardone (May 6, 1998), Summit App. Nos. 18349 and 18673.
 {¶ 22} Therefore, the second assignment of error is overruled.
 {¶ 23} Accordingly, judgment is affirmed.
 It is ordered that appellee recover of appellant costs herein taxed. *Page 10 
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
PATRICIA A. BLACKMON, J., and MARY J. BOYLE, J., CONCUR
[1] No motion for continuance or substitution of counsel was filed during the three-day trial by private counsel or assigned counsel. *Page 1