[Cite as *State v. Bell*, 2019-Ohio-340.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 106842**

**STATE OF OHIO**

PLAINTIFF-APPELLEE

vs.

**JEROME JAMES BELL**

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED AND REMANDED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-16-605495-A

**BEFORE:** Laster Mays, J., S. Gallagher, P.J., and Celebrezze, J.

**RELEASED AND JOURNALIZED:** January 31, 2019

-i-

**ATTORNEY FOR APPELLANT**

Joseph V. Pagano
P.O. Box 16869
Rocky River, Ohio 44116


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor

By:    Jillian Eckart
Assistant County Prosecutor
Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113


ANITA LASTER MAYS, J.:

{¶1}   Defendant-appellant Jerome James Bell ("Bell") files this delayed appeal of his bench trial conviction and sentence for multiple counts arising from the April 16, 2016 shooting death of Dontez Hopper ("Hopper").   After a review of the record, we affirm Bell's convictions and sentence.   This matter is remanded to the trial court for a nunc pro tunc entry to incorporate consecutive sentencing in the journal entry.

I.     **Background and Facts**

{¶2} Bell was indicted for:

Count 1, aggravated murder in violation of R.C. 2903.01(A);

Count 2, aggravated murder in violation of R.C. 2903.01(B);

Count 3, murder in violation of R.C. 2903.02(A);

Count 4, murder in violation of R.C. 2903.02(B);

Count 5, felonious assault in violation of R.C. 2903.11(A)(1);

Count 6, felonious assault in violation of R.C. 2903.11(A)(2);

Count 7, kidnapping in violation of R.C. 2905.01(A)(3);

Count 8, discharge of firearm over a public road or highway in violation of R.C. 2923.162(A)(3);

Count 9, having weapons while under disability in violation of R.C. 2923.13(A)(2);

Count 10, tampering with evidence in violation of R.C. 2921.12(A)(1); and
Count 11, unauthorized use of a motor vehicle in violation of R.C. 2913.03(A).

Several of the counts carried repeat violent offender and firearm specifications.

### A.    Pretrial

{¶3}  A motion to withdraw due to a conflict of interest filed by one of Bell's defense counsel was denied as well as Bell's motion to suppress his confession to the shooting.  Bell rejected the state's plea offer and proceeded to a bench trial.

### B.    Bench Trial

{¶4} At approximately midnight on April 16, 2016, Bell and members of Bell's family and friends were socializing and drinking at the two-family residence on East 99th Street in Cleveland.  Bell resided with his mother Yvette Dowell ("Dowell") and brother Michael Bell ("Michael") in the second-floor unit.  Bell's sister Shalante Dowell ("Shalante") resided in the first-floor unit.  The state charged that Bell was standing on the second-floor porch when he shot Hopper in the driveway of the residence that night.

{¶5} Bell's girlfriend Catherine Paige ("Paige") testified that Hopper and Bell were "like brothers" and the three would "hang out" together. (Tr. 173.) The evening of the shooting, about 10:00 or 11:00 p.m., Paige picked up Hopper on the way to Bell's house to pick up Bell.

{¶6} Hopper entered the house while Dowell sat in the SUV and talked with Paige. Hopper returned quickly saying, "'Sis, Rome [Bell] trippin'. * * * Just drop me off." (Tr. 180.) Dowell told Paige that she believed Bell needed counseling because "he just flipped out on my daughter's company." (Tr. 182.) Dowell told Hopper that she considered calling the police but Hopper told her not to and went back into the house.

{¶7} Paige and Dowell were standing in the driveway talking and the SUV was still running when they heard two or three quick gunshots. Paige dropped to the ground. She heard Dowell screaming that Hopper had been shot and both ran over to Hopper who was lying in the driveway. Paige looked up to see her SUV backing out of the driveway and Bell's brother Michael yelling at Bell to stop. Paige called police to report the theft and was later transported to speak with homicide detectives.

{¶8} Dowell testified that her brother Marvin Bell, and sons Michael and Bell were at the house the night of the shooting drinking and socializing with friends. Dowell was intoxicated that evening. Bell was in the house when Paige pulled into the driveway with Hopper. Dowell went outside to hug Hopper, who was like a son to her. Dowell talked briefly with Paige. She saw Bell walk onto the upstairs porch and say hello to Hopper, and she went back into the house to the restroom, when she heard three gunshots, a common occurrence in the area. She went outside to find that Paige was still there and Hopper was lying on the ground. Dowell began holding Hopper and screaming. Bell left in the vehicle, and Bell's brother Michael was sleeping upstairs at the time.

{¶9}   The state played Dowell's videotaped police interview several times to refresh her recollection due to conflicts between the interview and current testimony.   Dowell insisted that she was intoxicated when speaking with detectives, so the recording did not refresh her recollection.   Dowell was sure that she did not see a gun that night and denied owning a gun. She did not recall telling police that Bell and Hopper were arguing or had exchanged words other than the brief greeting that occurred when Bell was on the porch.   Dowell tested positive for gun shot residue, but forensics opined it was because of her close proximity to Hopper.

{¶10} Sister Shalante testified that Dowell, Bell, Michael, Uncle Marvin, and others were upstairs and she was in her first-floor unit with friends.   Shalante returned from the store about midnight and she heard three gunshots.   Shalante heard her mother screaming and looked outside to see her holding Hopper.   Paige was also there, but Shalante did not see Bell.

{¶11}   Michael testified that he returned home from work at about 11:00 p.m. and went to sleep quickly in spite of the social activities.   He did not hear shots but ran to the driveway when he heard his mother screaming.   Michael saw Bell at the residence before he went to sleep but did not see him afterwards.   Michael did not recall seeing Paige in the driveway when he ran downstairs.   To his knowledge, no guns were kept at the residence and he did not see a gun that evening.

{¶12} Cleveland Police Department ("CPD") Officers McNamara and Bohlen responded to the scene to find Hopper lying in the middle of the driveway suffering from a gunshot wound. A visibly upset young male and Dowell, who was crying hysterically, were kneeling beside Hopper.   The officers performed CPR until EMS arrived.   Dowell informed the officers that Bell had left the scene.

{¶13} Homicide Detectives Ford ("Det. Ford") and Fischbach ("Det. Fischbach") also responded. They interviewed Bell's uncle Marvin, brother Michael, mother Dowell, and sister Shalante and determined that Bell was a suspect. Dowell consented to a search of the residence, but no evidence was discovered.

{¶14} A single spent bullet casing was located in the grassy area adjacent to the first-floor front porch. A damaged bullet located on the grass on the opposite side of the driveway and another found lying in the street were marked but did not appear to be connected with the shooting.

{¶15} Det. Ford and Det. Fischbach secured an arrest warrant. Bell was picked up Sunday evening and interviewed by the detectives that Monday. Bell ultimately confessed that he and Hopper were arguing and he shot him.

{¶16} Cuyahoga County Forensic Scientist Daniel Mabel ("Mabel") concluded that Hopper was approximately four to five feet from the gun when fired. County medical examiner and forensic pathologist Joseph Felo ("Dr. Felo") testified that a single fatal gunshot wound entered the center of the chest, proceeded at a downward angle, and exited through the left side of the chest below the armpit, perforating the heart and left lung of Hopper.

{¶17} Cuyahoga County jail investigator Andrew Hudson ("Hudson") monitored inmate mail and telephone calls. Over defense objections, Hudson read excerpts of letters sent by Bell. Letters to Bell's mother and sister urged them to press defense counsel about the motion to suppress. A letter to Bell's brother advised that Dowell and Shalante could "plead the Fifth or don't talk at all," and a letter to a friend inquired whether "can they convict you off just your confession with no witnesses, no other evidence?" (Tr. 249-250.) The telephone calls included

discussions about the motion to suppress, questioning of the mother and sister by the prosecution and police, and that individuals who were at the scene had been subpoenaed to testify.

{¶18} The state rested pending admission of the exhibits. The state then requested to call a witness from the clerk of court's office to introduce a certified copy of the journal entry of Bell's prior convictions. The defense objected but stipulated to the exhibit after the trial court said it was going to allow the testimony.

{¶19} Defense counsel moved for judgment of acquittal pursuant to Crim.R. 29. Counsel argued that the elements had not been met for kidnapping, firing a firearm over a public road, tampering with evidence, aggravated murder, murder for purposely causing death, murder as a proximate result of a felonious assault, having a weapon while under disability, felonious assault, and unauthorized use of a motor vehicle. The state relied on the confession in rebuttal. The trial court denied the motion.

### C. Verdict and Sentence

{¶20} On August 17, 2017, Bell was found not guilty of the aggravated murder offenses charged in Counts 1 and 2 and guilty of Counts 3 through 11 as well as the accompanying repeat violent offender and firearm specifications. Counts 3 through 8 merged for sentencing. Bell was sentenced to 15 years to life on Count 3, prior to and consecutive with 3 years for a firearm specification and a consecutive 10 years for the repeat violent offender specification.

{¶21} Bell was sentenced to 36 months on Count 9 in addition to a 3-year firearm specification to be served consecutively, 36 months on Count 10 and 6 months on Count 11 to be served concurrently with Counts 3, 9, and 10 for a total of 37 years to life.

## II. Assignments of Error

{¶22} Bell presents nine assignments of error:

I.    The trial court erred by denying appellant's motion to suppress statements in violation of his constitutional rights.

II.   The trial court erred when it denied appellant's motion for acquittal under Crim.R. 29 because the state failed to present sufficient evidence to establish beyond a reasonable doubt the elements necessary to support the convictions.

III.  Appellant's convictions are against the manifest weight of the evidence.

IV.   The trial court erred by admitting letters and jail phone calls that were not properly authenticated.

V.    The court erred by allowing the state to refresh Yvette Dowell's recollection with her prior recorded statement.

VI.   The court erred by denying counsel's motion to withdraw and appellant's motion to disqualify counsel.

VII.  The trial court erred by allowing the state to reopen the case in order to introduce a prior conviction that was necessary to sustain one of appellant's convictions.

VIII. The court erred by allowing the state to elicit hearsay.

IX.   Appellant was denied a fair trial because the state improperly elicited inadmissible other acts evidence.

## III.   Discussion

### A.    Suppression

#### 1.    Standard of Review

{¶23}   A motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. When considering a motion to suppress, the trial court assumes the role of trier of fact and is, therefore, in the best position to resolve factual questions and evaluate the credibility of witnesses. *Id.* Consequently, an appellate court must defer to the trial court's findings of fact if they are supported by competent, credible evidence. *Id.* An appellate court, however, must

independently determine as a matter of law, without deference to the trial court's conclusion, whether the facts meet the applicable standard. *State v. Hill*, 8th Dist. Cuyahoga Nos. 83762 and 83775, 2005-Ohio-3155, ¶ 12.

### 2. Discussion

**{¶24}** On June 19, 2017, Bell filed a motion to suppress pursuant to Crim.R. 12(C)(3) that asserted his arrest was unlawful because the arrest warrant presented to Bell was not signed. At the pretrial hearing, counsel advised the trial court that the written motion did not include the second suppression issue that Bell's statement to police was not knowingly, intelligently, or voluntarily made because Bell was on drugs or intoxicated at the time of his arrest meaning he was unable to waive his *Miranda* rights.

**{¶25}** Det. Ford served as the sole witness at the July 10, 2017 suppression hearing. Det. Ford and his partner Det. Fischbach had been homicide detectives for approximately 20 years.

**{¶26}** Det. Ford testified that information was quickly acquired leading police to Bell. Interviews were conducted on the scene including with Bell's family members. An arrest warrant was secured from the city prosecutor and the information was provided to the fugitive suspect team. Police were contacted by Bell's family advising that Bell wanted to turn himself in. Bell was picked up by a police zone car "on his outstanding warrant." (Tr. 68.)

**{¶27}** Bell was transported to the police department on April 17, 2017, and interviewed by Det. Ford and Det. Fischbach on April 18, 2017. Det. Ford testified that, while Bell's speech was "reserved," Bell did not smell of alcohol and did not appear to be under the influence. (Tr. 70-71.)

**{¶28}** This court has previously recognized that

In order for a defendant's waiver of *Miranda* rights to be valid, the waiver must be knowingly, intelligently, and voluntarily made. *Miranda* at 444. The state bears the burden of demonstrating, by a preponderance of the evidence, that a defendant knowingly, intelligently, and voluntarily waived his *Miranda* rights based on the totality of the circumstances. *State v. Gumm*, 73 Ohio St.3d 413, 429, 653 N.E.2d 253 (1995). "The totality of the circumstances includes 'the age, mentality, and prior criminal experience of the accused; the length, intensity, and frequency of interrogation; the existence of threat or inducement.'" *State v. Campbell*, 90 Ohio St.3d 320, 332, 738 N.E.2d 1178 (2000), quoting *State v. Edwards*, 49 Ohio St.2d 31, 358 N.E.2d 1051 (1976), paragraph two of the syllabus. Absent a showing that the waiver was voluntary, the waiver is invalid and the defendant's statements should be suppressed. *Id*.

*State v. Moore*, 2012-Ohio-1958, 970 N.E.2d 1098, ¶ 62 (8th Dist.).

{¶29} Review of the video reveals Bell speaking in a low voice and yawning frequently throughout the interview. The video confirms the testimony of Det. Ford that, after obtaining identifying information, the *Miranda* rights, a copy of which was set forth on a large poster on the wall beside where Bell was seated, were read to Bell. Bell told the detectives that he wanted to waive his rights and talk with them.

{¶30} Bell informed them that he had not been "acting like himself" because he had not eaten, slept, or showered since Friday and that police did not tell him why he was being arrested. While Bell seemed somewhat fatigued, there is no evidence that he was under the influence of drugs or alcohol nor was any evidence ever introduced to that effect. Defense counsel advised,"I will not be putting on any witnesses with respect to his state of mind in terms of inebriation." (Tr. 80.) We also note that Bell was familiar with the process because he had been *Mirandized* for prior arrests.

{¶31} The video evidence supports the trial court's conclusion that:

[B]ased on the evidence that I heard here, and watching the video, it's clear the detective read the rights to this [d]efendant. The [d]efendant actually looked at the poster on the wall with his rights. He did verbally say that he understood, and he wished to waive his right to an attorney and speak with the detective.

I know the detective described, when asked about the interview in general, his answers seemed calculated. And based on what the detective recalls, from what I saw, and the only real evidence offered with respect to how the [d]efendant acted up through 5 minutes and 12 seconds of this video we have seen in part of this hearing, is that he didn't smell of alcohol.

He could answer questions after some thinking about it. He yawned a couple times. Looks like he might have been tired. I didn't hear any slurring of his words or any indication that he didn't understand the nature of the questions.

So at this point, there is not evidence that the [d]efendant was not aware, and that he did, in fact, knowingly, intelligently, and voluntarily waive his right in speaking to the detective. So there is no basis for the [c]ourt to suppress the statement at this time.

(Tr. 80-81.)

{¶32} On the issue of the arrest warrant, the trial court determined that the signature of

the deputy clerk did not invalidate the warrant based on *State v. Rucci*, 7th Dist. Mahoning No.

14 MA 47, 2015-Ohio-2097. We again find that the trial court's analysis is directly on point:

I've also reviewed *State v. Rucci*, R-U-C-C-I, Court of Appeals 7th Appellate District, Mahoning County, decided May 28th, 2015, which this issue was adjudicated in that matter that [Crim.R.] 4 allows a deputy clerk to issue an arrest warrant, sign an arrest warrant upon presentation by a peace officer and probable cause.

There is no other evidence before the [c]ourt here with respect to any irregularities with how that warrant was obtained. The only issue is whether or not a deputy [c]lerk of [c]ourts can sign a warrant. And it's clear this case stems from that proposition that it is proper for a deputy clerk pursuant to [R.C.] 2935.10(A) and [Crim.R.] 4.

(Tr. 83.)

{¶33} The *Rucci* court explained:

An arrest warrant "shall be issued by a judge, magistrate, clerk of court, or officer of the court designated by the judge." *State v. Jones*, 7th Dist. [Mahoning] No. 11 MA 60, 2012-Ohio-1301, ¶17, citing Crim.R. 4(A)(1). A defendant bears the burden of showing that a clerk lacks the capacity to determine probable cause.

*Jones* at ¶18, citing *Shadwick v. City of Tampa*, 407 U.S. 345, 350-351, 92 S.Ct. 2119, 32 L.E.2d 783 (1972).

A reviewing court should give great deference to an official's determination of probable cause and resolve all doubtful or marginal cases in favor of upholding the warrant. *State v. Mendell*, 2d Dist. [Montgomery] No. 24822, 2012-Ohio-3178, ¶10. A reviewing court's role in such cases is to determine whether there was a substantial basis to find probable cause existed. *Id*., citing *State v. Tibbetts*, 92 Ohio St.3d 146, 153, 749 N.E.2d 226 (2001).

*Id*. at ¶ 9-10.

**{¶34}** Though the burden is on the defense to show that the deputy clerk lacked the requisite authority, the defense offered no witnesses. "The only thing that I would say is that we're aware that the document that was signed, I believed the person's signature is written deputy clerk. I don't know this person, and can only assume this person is a deputy clerk." (Tr. 82.) The state countered that the sole argument offered by Bell in the motion to suppress is that it was not signed by a judge.

**{¶35}** *Rucci* further explained that

the Ohio legislature has clearly stated that a clerk can issue a warrant. Pursuant to R.C. 2935.09(C), "[a] peace officer who seeks to cause an arrest or prosecution under this section may file with a reviewing official or the clerk of a court of record an affidavit charging the offense committed." Further, R.C. 2935.10(A)-(B)(1) states that a judge, clerk, or magistrate may issue an arrest warrant on the filing of an affidavit or complaint charging a misdemeanor.

In fact, the U.S. Supreme Court has noted that no court has held that only a lawyer or a judge has the authority to grant a warrant; rather, it has been recognized that lay people may issue warrants. *Shadwick [v. Tampa,* 407 U.S. 345,] at 350-351, 92 S.Ct. 2119, 32 L.E.2d 783 (1972). We recognized the *Shadwick* holding in *Jones*, supra.

*Rucci* at ¶ 11-12.

**{¶36}** The first assigned error lacks merit.

**B.      Crim.R. 29, Sufficiency, and Manifest Weight of the Evidence**

**{¶37}** We combine the second and third assigned errors questioning the denial of the Crim.R. 29 motion for judgment of acquittal and weight of the evidence for purposes of judicial economy.

### 1. Standard of Review

**{¶38}** "A Crim.R. 29(A) motion for acquittal tests the sufficiency of the evidence." *State v. Capp*, 8th Dist. Cuyahoga No. 102919, 2016-Ohio-295, ¶ 19.

> Crim.R. 29 mandates that the trial court issue a judgment of acquittal where the state's evidence is insufficient to sustain a conviction for an offense. Accordingly, an appellate court reviews a trial court's denial of a defendant's motion for acquittal using the same standard it applies when reviewing a sufficiency-of- the-evidence claim.

*State v. Hoskin-Hudson*, 8th Dist. Cuyahoga No. 103615, 2016-Ohio-5410, ¶ 7.

**{¶39}** "The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different." *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). A challenge to the sufficiency of the evidence is a question of law that asks whether the state met its burden of production. A manifest weight challenge is a question of fact and asks whether the state met its burden of persuasion. *State v. Jackson*, 8th Dist. Cuyahoga No. 88028, 2007-Ohio-823, ¶ 11, citing *Thompkins* at 386.

**{¶40}** The sufficiency inquiry is not whether the prosecution's evidence "is to be believed, but whether, if believed, the evidence admitted at trial supported the conviction." *State v. Rudd*, 8th Dist. Cuyahoga No. 102754, 2016-Ohio-106, ¶ 32, citing *State v. Starks*, 8th Dist. Cuyahoga No. 91682, 2009-Ohio-3375, ¶ 25. We view the evidence in a light most favorable to the prosecution and determine whether "'any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Leonard*, 104

Ohio St.3d 54, 2004-Ohio-6235, 818 N.E.2d 229, ¶ 77, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶41} In our manifest weight review of a bench trial verdict, we recognize that the trial court is serving as the fact-finder, and not a jury:

> "Accordingly, to warrant reversal from a bench trial under a manifest weight of the evidence claim, this court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether in resolving conflicts in evidence, the trial court clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered."

*State v. Strickland*, 183 Ohio App.3d 602, 2009-Ohio-3906, 918 N.E.2d 170, ¶ 25 (8th Dist.), quoting *Cleveland v. Welms*, 169 Ohio App.3d 600, 2006-Ohio-6441, 863 N.E.2d 1125 (8th Dist.), citing *Thompkins* at 390. *See also State v. Kessler*, 8th Dist. Cuyahoga No. 93340, 2010-Ohio-2094, ¶ 13.

{¶42} Further,

> Although sufficiency and manifest weight are different legal concepts, manifest weight subsumes sufficiency in conducting the legal analysis; that is, a finding that a conviction was supported by the manifest weight necessarily includes a finding of sufficiency. Thus, a determination that a conviction is supported by the weight of the evidence will also dispose of the issue of sufficiency.

*State v. Jackson*, 8th Dist. Cuyahoga No. 100125, 2015-Ohio-1946, ¶ 11, citing *Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541, at paragraph two of the syllabus.

### 2. Discussion

{¶43} Bell argues that, without his confession, there was no evidence introduced to support the convictions because the gun was not recovered at the scene, there was no DNA evidence connecting Bell to the crime, others tested positive for gunshot residue, and it was dark outside when the shooting occurred.

**{¶44}** In spite of conflicting details, Paige, Dowell, Shalante, and Michael said that Bell was at the second floor residence the night of the shooting. The forensic evidence demonstrates that Hopper was shot by a single bullet that "traveled from his right towards his left, from the front of his chest towards the left side of his chest and downward." (Tr. 139.) The entrance wound was approximately two inches higher than the exit wound indicating the shot was fired at a downward angle. Dowell's testimony placed Bell on the front porch at least at one point that evening.

**{¶45}** Paige testified that Bell took her SUV and left the scene. The 911 call by Paige reporting the theft confirms her testimony. Police testimony corroborates that Bell was not at the scene when they arrived. Significantly, Bell confessed to the shooting. Bell also inquired in correspondence mailed from the jail whether he could be convicted based on a confession without physical evidence and urged the family to press defense counsel for the motion to suppress.

**{¶46}** The trial court took note of the conflicts in the testimony and determined that the consistencies "pointed to the responsibility of" Bell for Hopper's death. The evidence was not sufficient to demonstrate prior calculation and design supporting aggravated murder.

**{¶47}** Specifically Bell challenges Count 3, murder (R.C. 2903.02(A)), Count 4, murder (R.C. 2903.02(B)), Count 5, felonious assault (R.C. 2903.11(A)(1)), Count 6, felonious assault (R.C. 2903.11(A)(2)), Count 7, kidnapping (R.C. 2905.01(A)(3)), Count 8, discharge of firearm over a public road or highway (R.C. 2923.162(A)(3)), Count 9, having weapons while under disability (R.C. 2923.13(A)(2)), Count 10, tampering with evidence (R.C. 2921.12(A)(1)), and Count 11, unauthorized use of a motor vehicle (R.C. 2913.03(A)).

**{¶48}** Counts 3 through 8 merged, and the state proceeded to sentencing on the Count 3 murder charge:

> (B) No person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree and that is not a violation of section 2903.03 [voluntary manslaughter] or 2903.04 [involuntary manslaughter] of the Revised Code.

R.C. 2903.02(B).

**{¶49}** Multiple witnesses testified that Bell was present at the residence that evening. Paige recounted statements by Hopper and Dowell that Bell was agitated and "trippin.'" (Tr. 395.) The trial court determined that the "shot to the middle" of Hopper's chest and the bullet's downward trajectory angle served as "circumstantial evidence" "that [the shooting] was purposeful." (Tr. 396.)

**{¶50}** While much of the evidence was circumstantial in this case, Bell confessed to the shooting. Circumstantial evidence and direct evidence are indistinguishable so far as the fact-finding function is concerned. *State v. Durham*, 2016-Ohio-691, 60 N.E.3d 552, ¶ 160 (8th Dist.), citing *Jenks*, 61 Ohio St.3d 259, 272, 574 N.E.2d 492 (1991).

> It is, however, well-settled under Ohio law that a defendant may be convicted solely on the basis of circumstantial evidence. *State v. Kulig*, 37 Ohio St.2d 157, 309 N.E.2d 897 (1974); *State v. Hankerson*, 70 Ohio St.2d 87, 434 N.E.2d 1362, certiorari denied (1982); *State v. Kamel*, 12 Ohio St.3d 306, 466 N.E.2d 860 (1984). "* * * [P]roof of guilt may be made by circumstantial evidence as well as by real evidence and direct or testimonial evidence, or any combination of these three classes of evidence. All three classes have equal probative value, and circumstantial evidence has no less value than the others. 1A Wigmore, *Evidence* (Tillers Rev. 1983) 944, Section 24 *et seq*." *State v. Griffin,* 13 Ohio App.3d 376, 377, 469 N.E.2d 1329, 1331 (1st Dist.1979). "Circumstantial evidence is not less probative than direct evidence, and, in some instances, is even more reliable." *United States v. Andrino*, 501 F.2d 1373, 1378 (9th Cir.1974).

*State v. Nicely*, 39 Ohio St.3d 147, 151, 529 N.E.2d 1236 (1988).

**{¶51}** The Ohio Supreme Court subsequently clarified that

> [W]hen the state relies on circumstantial evidence to prove an element of the offense charged, there is no requirement that the evidence must be irreconcilable with any reasonable theory of innocence in order to support a conviction.

*Jenks*, 61 Ohio St.3d at 273, 574 N.E.2d 492.

**{¶52}** Based on our review of the record, we find that Bell's conviction for murder, and the accompanying firearm specification, are legally sufficient and are not against the manifest weight of the evidence.

**{¶53}** We need not address the merged counts. Pursuant to R.C. 2941.25 governing allied offenses of similar import, "'a 'conviction' consists of a guilty verdict *and* the imposition of a sentence or penalty.'" (Emphasis sic.) *State v. Franks,* 8th Dist. Cuyahoga No. 103682, 2016-Ohio-5241, ¶ 18, quoting *State v. Whitfield*, 124 Ohio St.3d 319, 2010-Ohio-2, 922 N.E.2d 182, ¶ 12, citing *State v. Gapen*, 104 Ohio St.3d 358, 2004-Ohio-6548, 819 N.E.2d 1047, ¶ 135. The merged counts are not convictions. *Id.*, citing *State v. Williams*, 4th Dist. Scioto No. 11CA3408, 2012-Ohio-4693, ¶ 54; *State v. McKinney*, 10th Dist. Franklin No. 08AP-23, 2008-Ohio-6522, ¶ 39. Any sufficiency error regarding the merged counts would be harmless. *State v. Rucker*, 8th Dist. Cuyahoga No. 105628, 2018-Ohio-1832, ¶ 35, citing *Franks* at ¶ 18.

**{¶54}** The remaining challenges are to Counts 9, 10, and 11: having a weapon while under disability (R.C. 2923.13(A)(2)), tampering with evidence (R.C. 2921.2(A)(1)), and unauthorized use of a motor vehicle (R.C. 2913.03(A)). These counts did not merge.

**{¶55}** We find, in short order, that Bell confessed to the shooting so it is axiomatic that he used a gun. Bell left the scene in Paige's SUV, as the 911 call and witness testimony confirms, prior to the arrival of police who searched the residence with Dowell's consent. No

gun was located, but the forensic expert testified that the gunshot residue on Dowell's hands may have come from handling the weapon after it was fired.

{¶56} Viewed in a light most favorable to the state, we find that the evidence was sufficient to prove the elements of the crimes beyond a reasonable doubt. In addition, based on our review of the record, we cannot say that this is the "'exceptional case in which the evidence weighs heavily against [Bell's] conviction[s.]'" *Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541, quoting *State v. Martin*, 20 Ohio App.3d 172, 485 N.E.2d 717 (1st Dist.1983), paragraph three of the syllabus.

{¶57} The second and third assigned errors lack merit.

**C.      Admission of Prison Letters and Calls**

{¶58} Bell claims as his fourth assigned error that the letters and calls were not properly authenticated.   We disagree.

**1.      Standard of Review**

{¶59} The admission or exclusion of relevant evidence rests within the discretion of the trial court.  *State v. Robb*, 88 Ohio St.3d 59, 68, 2000-Ohio-275, 723 N.E.2d 1019 (2000).   An appellate court will not disturb a decision of the trial court to admit or exclude evidence absent a clear and prejudicial abuse of discretion.  *Donovan v. Donovan*, 110 Ohio App.3d 615, 620, 674 N.E.2d 1252 (12th Dist.1996); *State v. Robinson*, 8th Dist. Cuyahoga No. 99917, 2014-Ohio-2973, ¶ 23.   An abuse of discretion standard "connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

**2.      Discussion**

**{¶60}** Bell argues that the admission of the prison telephone recordings and correspondence was improper because it was not properly authenticated. We first observe that Bell raises this argument for the first time on appeal. No objection was raised or preserved as to the authenticity of the documentary evidence introduced at trial.[1] The exhibits were also offered into evidence without objection at the close of trial. Under Evid.R. 103(A), error cannot be predicated on a ruling that admits evidence unless a substantial right of the party is affected and a timely objection was preserved in the record.

**{¶61}** Thus, we are limited to reviewing for plain error — a standard that has not been discussed, much less demonstrated, by Bell.

> [A] reviewing court's analysis is generally limited to reviewing issues raised on appeal solely for plain error or defects affecting a defendant's substantial rights pursuant to Crim.R. 52(B). *State v. Tisdale*, 8th Dist. Cuyahoga No. 74331, 1998 Ohio App. LEXIS 6143 (Dec. 17, 1988). The plain error doctrine should be invoked by an appellate court only in exceptional circumstances to prevent a miscarriage of justice. *State v. Cooperrider*, 4 Ohio St.3d 226, 227, 448 N.E.2d 452 (1983). Plain error will be recognized only where, but for the error, the outcome of the case would clearly have been different. *Id.*

*State v. King*, 184 Ohio App.3d 226, 2009-Ohio-4551, 920 N.E.2d 399, ¶ 8 (8th Dist.).

**{¶62}** "'Under the plain-error analysis'" a party is required to "'establish that the outcome of the trial would clearly have been different but for the trial court's allegedly improper actions.'" *State v. Thompson*, 8th Dist. Cuyahoga No. 96929, 2012-Ohio-921, ¶ 17, quoting *State v. Waddell*, 75 Ohio St.3d 163, 166, 661 N.E.2d 1043 (1996).

**{¶63}** Evid.R. 901:

> governs the authentication of demonstrative evidence, including recordings of telephone conversations. The threshold for admission is quite low, and the

---

[1] The only objection voiced during the admission of the letters and recorded calls came after the state asked to conduct an additional direct examination of the witness. This is not sufficient to preserve an objection to the authentification of documents already introduced.

> proponent of the evidence need only submit "evidence sufficient to support a finding that the matter in question is what its proponent claims." Evid.R. 901(A). "[T]he proponent must present foundational evidence that is sufficient to constitute a rational basis for a jury to decide that the primary evidence is what its proponent claims it to be." *State v. Tyler*, 4th Dist. [Ross] No. 10CA3183, 196 Ohio App. 3d 443, 964 N.E.2d 12, 2011-Ohio-3937, ¶ 25, citing *State v. Payton*, 4th Dist. No. [Ross] 01-CA2606, 2002-Ohio-508. A proponent may demonstrate genuineness or authenticity through direct or circumstantial evidence. *Tyle*r at *i*d., citing *State v. Williams*, 64 Ohio App.2d 271, 274, 413 N.E.2d 1212 (8th Dist. 1979).

*State v. Thompson*, 8th Dist. Cuyahoga No. 96929, 2012-Ohio-921, ¶ 27.

**{¶64}** To be deemed admissible, recorded telephone calls must be "authentic, accurate, and trustworthy." *Id*. at ¶ 28, citing *Tyler* at ¶ 26, citing *State v. Were*, 118 Ohio St.3d 448, 2008-Ohio-2762, 890 N.E.2d 263.

> "[C]onclusive evidence as to authenticity and identification need not be presented to justify allowing evidence to reach the jury," the evidence required to establish authenticity need only be sufficient to afford a rational basis for a jury to decide that the evidence is what its proponent claims it to be.

*Id*., quoting *State v. Bell*, 12th Dist. Clermont No. CA2008-05-044, 2009-Ohio- 2335, ¶ 17, 30.

**{¶65}** Further, the state is only required to "'demonstrate a 'reasonable likelihood' that the recording'" is authentic. *Id*., quoting *Bell* at ¶ 30, citing Evid.R. 901(B)(1). "Such evidence may be supplied by, but is not limited to, the testimony of a witness with knowledge, voice identification, or by evidence that a call was made to the number assigned at the time by the telephone company to a particular person." *Id*. at ¶ 29, citing Evid.R. 901(B)(1), (5), and (6); *State v. Moshos*, 12th Dist. Clinton No. CA2009-06-008, 2010-Ohio-735, ¶ 14; *State v. Small*, 10th Dist. Franklin No. 06AP-1110, 2007-Ohio-6771, ¶ 38.

**{¶66}** Additionally,

> Evid. R. 901 provides for two methods by which a trial court may find that these phone conversations are admissible. Evid.R. 901(B)(9) provides that a sound recording may be authenticated through evidence that demonstrates a process or

system used that produces an "accurate result." And Evid.R. 901(B)(5) provides for authentication by voice identification "whether heard firsthand or through mechanical or electronic transmission or recording."

*Id*. at ¶ 31.

**{¶67}** County jail investigator Hudson testified that his role was to investigate inmate activities and respond to legal subpoenas by monitoring mail and telephone calls based on the name, inmate number, and for telephone calls, pin numbers of prisoners. Hudson was trained on the policies and procedures of the prison telephone and mail procedures required by his position. He was also trained to use the Securus computerized inmate telephone call recording system and testified that inmate telephone calls are tracked and recorded by date, name, and pin number.

**{¶68}** The calls initiated by Bell included discussions about the motion to suppress and advised the recipient to pay close attention to the letter that he was sending. In a subsequent call, Bell advised the call recipient that he did not have to go to court earlier and they discussed some of the questions that police and the prosecutor asked the call recipient and Bell's mother. There was a later discussion that individuals at the scene were being subpoenaed but if the suppression hearing was successful, the trial would be unnecessary.

**{¶69}** Three letters were introduced into evidence. The first was an envelope from J. Bell listing his inmate number containing letters addressed to Bell's mother and sister Shalante. The letters included the name and telephone number of one of Bell's assigned counsel and asked that they keep the pressure on the attorney for the motion to suppress.

**{¶70}** The second letter also contained Bell's identification information and was addressed to Mike B. The letter lists the date and time for Bell's trial. As Hudson read for the record:

"Momma got to do" — got to do — it say to the first. They ask, "Do you see the person who shot such and such that night? Y'all say, No. It's over for real. But any and y'all don't want to answer, say you plead the Fifth or don't talk at all."

(Tr. 248.) A third letter was addressed to "A. Patterson" and inquired whether a person could be convicted "'off just your confession with no witnesses, no other evidence?'" (Tr. 250.)

**{¶71}** Evid.R. 901(B) sets forth examples of authentication and identification methods.

(B) Illustrations. By way of illustration only, and not by way of limitation, the following are examples of authentication or identification conforming with the requirements for this rule: * * *

(4) Distinctive characteristics and the like. Appearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances.

Evid.R. 901(B)(4).

**{¶72}** As clarified by the Staff Notes,

Rule 901(B)(4) provides that an item, or even a voice, may be authenticated or identified because of its contents or distinctive characteristics in light of the circumstances involved. A letter or a voice over the telephone may be related to a particular person by the very fact that the matters set forth in the letter or the telephone conversation were known peculiarly to a particular person. *See* McCormick § 255 (2d ed. 1972).

**{¶73}** The Seventh District has also addressed authentification of correspondence pursuant to Evid.R. 901(B)(4):

The purpose of the authentication rule is to connect the disputed piece of evidence to the case at hand by presenting indicators that the evidence is what it is claimed to be. *State v. Brown*, 151 Ohio App.3d 36, 2002-Ohio-5207, 783 N.E.2d 539, ¶ 35 (7th Dist.) * * *

[E]vidence is properly authenticated when its appearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with the circumstances, are sufficient to support a finding that the evidence is what its proponent claims. *Id*. at ¶39. In evaluating the totality of the circumstances, we explained that the court can consider the envelope and contents. *Id*. at ¶ 40. For instance, the court can scan for any distinctive contents, such as facts that only the alleged writer would know. *Id*. at ¶ 39. This is true even if the letter is unsigned or anonymous. *Id*. at ¶ 40. As for the envelope, the return address can be relevant to the determination of authenticity. *Id*. Again, we explained [in *Brown*] that challenges to the authorship of documents such as letters normally go to the weight rather than admissibility. *Id.*

*State v. Townsend,* 7th Dist. Mahoning No. 04 MA 110, 2005-Ohio-6945, ¶ 54-55.

**{¶74}** "A proponent may demonstrate genuineness or authenticity through direct or circumstantial evidence." *Thompson*, 8th Dist. Cuyahoga No. 96929, 2012-Ohio-921, at ¶ 27, citing *State v. Tyler*, 196 Ohio App.3d 443, 2011-Ohio-3937, 964 N.E.2d 12, ¶ 25 (4th Dist.), citing *State v. Williams*, 64 Ohio App.2d 271, 274, 413 N.E.2d 1212 (8th Dist.1979).

**{¶75}** The burden "is not great, and only requires a prima facie showing." *State v. Brown*, 1st Dist. Hamilton No. C-120327, 2013-Ohio-2720, ¶ 16, citing *State v. Huge*, 1st Dist. Hamilton No. C-120388, 2013-Ohio-2160, ¶ 27; *State v. Tyler*, 196 Ohio App.3d 443, 2011-Ohio-3937, 964 N.E.2d 12, ¶ 25 (4th Dist.). *See also Thompson*, 8th Dist. Cuyahoga No. 96929, 2012-Ohio-921.

**{¶76}** This court finds that Bell has failed to demonstrate that, but for the error, the outcome of the proceedings would have been different. *Thompson*, at ¶ 17; *Waddell*, 75 Ohio St.3d 163, 166, 661 N.E.2d 1043. The fourth assigned error lacks merit.

**D.    Evid.R. 612 Refreshing Recollection**

**{¶77}** Bell's fifth assigned error challenges the trial court's determination to allow the state to refresh Dowell's recollection of her statement to police though Dowell repeatedly stated that she was intoxicated at that time and could not remember. Bell argues that allowing the trial

court to view the videotape under the guise of refreshed recollection was improper under *State v. Powell*, 132 Ohio St.3d 233, 2012-Ohio-2577, 971 N.E.2d 865.

{¶78} This court has previously recognized that

> A party may refresh the recollection of a witness under Evid.R. 612 by showing him his prior statement while testifying. Under the doctrine of present recollection refreshed, the witness looks at the prior statement to refresh his memory of the events, but then proceeds to testify from his present, independent knowledge. *State v. Powell*, 132 Ohio St.3d 233, 2012-Ohio-2577, 971 N.E.2d 865, ¶ 57, citing *State v. Scott*, 31 Ohio St.2d 1, 5-6, 285 N.E.2d 344 (1972). The testimony of the witness whose memory has been refreshed is the evidence and the content of the statement is not placed before the jury. *Powell* at ¶ 57.

*State v. Webb*, 8th Dist. Cuyahoga No. 100487, 2014-Ohio-2644, ¶ 25.

{¶79} We find that Bell's reliance on Evid.R. 612 is misplaced. The witness testified that she did not remember the statement that was being used to refresh her memory and her trial testimony differed from the recorded statement. The state withdrew the evidence.

{¶80} In addition, the trial court acknowledged that the recording was not substantive evidence. "In a bench trial, the trial court is presumed to have considered only admissible evidence unless the record indicates otherwise." *State v. Reddy*, 192 Ohio App.3d 108, 2010-Ohio-5759, 948 N.E.2d 454, ¶ 58 (8th Dist.), citing *Cleveland v. Welms*, 169 Ohio App.3d 600, 2006-Ohio-6441, 863 N.E.2d 1125 (8th Dist.). "This presumption 'may be overcome only by an affirmative showing to the contrary by the appellant.'" *State v. Pearson*, 10th Dist. Franklin Nos. 14AP-793 and 14AP-816, 2015-Ohio-3974, ¶ 13, quoting *State v. Wiles*, 59 Ohio St.3d 71, 571 N.E.2d 97 (1991).

{¶81} Evid.R. 612 does not apply. The fifth assigned error is overruled.

E.      **Withdrawal or Disqualification of Counsel**

1.      **Standard of Review**

**{¶82}** A trial court has broad discretion in determining whether to remove court-appointed counsel. *State v. Patterson*, 8th Dist. Cuyahoga No. 100086, 2014-Ohio-1621, ¶ 19. An appellate court reviews the trial court's decision to determine whether that discretion has been abused. *Id.* An "abuse of discretion" implies that the court's decision was unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

### 2.    Discussion

**{¶83}** Bell's sixth assigned error objects to the denial of defense counsel's motion to withdraw and Bell's motion to disqualify. A defendant's right to counsel is guaranteed to be free from conflicts of interest by the Sixth Amendment to the United States Constitution. *Parma v. Fonte*, 8th Dist. Cuyahoga No. 99147, 2013-Ohio-3804, ¶ 68, citing *State v. Dillon*, 74 Ohio St.3d 166, 167, 657 N.E.2d 273 (1995).

**{¶84}** Two defense attorneys were initially assigned to Bell's case. Bell filed to disqualify one of the attorneys who had also moved to withdraw. Bell was dissatisfied with the lack of attention to his case, and counsel admitted that his schedule was overloaded. On March 29, 2017, the trial court granted the request and assigned a new co-counsel.

**{¶85}** At the next pretrial on July 10, 2017, the newly appointed counsel appeared with Bell's co-counsel. The co-counsel reported that an inmate who had been represented by the public defender's office on six prior cases was listed as a state witness. The inmate informed the public defender's office that Bell was discussing the case in the holding cell and "made incriminating statements" against Bell. (Tr. 29.)

**{¶86}** Counsel requested to withdraw based on the potential conflicts of interest. The state informed counsel that the witness would not be called and that the statements were not part

of the state's case. Bell denied that he had discussed the case with any of the inmates and admitted that he did not believe there was a conflict of interest. Bell requested the withdrawal because he did not agree with counsel on how the case was being handled.

{¶87} An indigent defendant is required to demonstrate that the relationship with counsel "has broken down to such a degree as to jeopardize [the] right to effective assistance of counsel." (Citations omitted.) *State v. Badran*, 8th Dist. Cuyahoga No. 90725, 2008-Ohio-6649, ¶ 8. The trial court is required to inquire into the indigent defendant's complaint regarding the assigned counsel and to "make the inquiry part of the record." (Citations omitted.) *Id.*

{¶88} The trial court conducted an extensive inquiry on the record in this case and determined that a disagreement with one of two counsel about defense strategy does not rise to the level required in *Badran*,

> [Y]ou know, Mr. Bell, having two attorneys is to your advantage in a trial, and it's very common for clients to disagree with what their lawyers are telling them. And they're just doing their job letting you know what their analysis of the law is so you can take that into account.

(Tr. 35.)

{¶89} The sixth assigned error also fails.

**F.     Prior Convictions**

{¶90} In the seventh assigned error, Bell argues that the trial court wrongfully allowed the introduction of a journal entry listing Bell's prior convictions to demonstrate disability after the state rested its case. We disagree.

{¶91} R.C. 2945.10 sets forth the "order of proceedings of trial" and states in pertinent part:

> The trial of an issue upon an indictment or information shall proceed before the trial court or jury as follows:

(C) The state must first produce its evidence and the defendant shall then produce the defendant's evidence.

(D) The state will then be confined to rebutting evidence, but the court, for good reason, in furtherance of justice, may permit evidence to be offered by either side out of its order.

R.C. 2945.10(C) and (D).

**{¶92}** Deviation from the order of proceedings is within the sound discretion of the trial court. *State v. Truhlar*, 8th Dist. Cuyahoga No. 103312, 2016-Ohio-5338, ¶ 38, citing *Columbus v. Grant*, 1 Ohio App.3d 96, 439 N.E.2d 907 (10th Dist. 1981).

**{¶93}** Pursuant to Evid.R. 611(A)

The court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment.

"Under this evidentiary rule, trial courts also have broad discretion and control over the order and proceedings of a trial." *Truhlar* at ¶ 40, citing *State v. Presley*, 10th Dist. Franklin No. 02AP-1354, 2003-Ohio-6069, ¶ 44.

**{¶94}** In light of the trial court's broad discretion, and the evidence in the record that Bell shot Hopper, we find that the trial court did not abuse its discretion. The seventh assigned error lacks merit.

### G. Admission of Hearsay Evidence

**{¶95}** Bell's eighth assigned error challenges as hearsay the testimony by Officer McNamara that Dowell was upset, crying, and difficult to speak with. "And then, I believe, at one point she said, 'my son.'" The state counters that the statement was admitted as an excited utterance pursuant to Evid.R. 803(2).

**{¶96}** An excited utterance under Evid.R. 803(2) is a "statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition."

> For an alleged excited utterance to be admissible, four prerequisites must be satisfied: (1) a startling event produced a nervous excitement in the declarant, (2) the statement was made while still under the stress of excitement caused by the event, (3) the statement related to the startling event, and (4) the declarant personally observed the startling event. *See State v. Ray*, 189 Ohio App.3d 292, 2010-Ohio-2348, 938 N.E.2d 378 (8th Dist.). There is no magic time limit to determine whether a victim of domestic violence is making a statement under the stress of a startling occurrence; these statements must "be analyzed in light of the particular facts and circumstances in which [they were] made." *State v. Griffitts*, 2d Dist. Montgomery No. 18755, 2002-Ohio-921, citing *State v. Justice*, 92 Ohio App.3d 740, 746, 637 N.E.2d 85 (9th Dist.1994). Lewis was visibly upset and crying; her face was swollen; and she had bruises on her face, as well as on her neck when she made the statements to the police officers. In our view, the trial court's decision to admit these statements was reasonable.

*Cleveland v. Williams*, 8th Dist. Cuyahoga No. 101588, 2015-Ohio-1739, ¶ 13.

**{¶97}** Officer McNamara testified that Dowell was running around and crying hysterically, yelling "'help, help. Help me.'" (Tr. 163.) During cross-examination, the officer said that he did not know who Dowell was referring to when she said, "my son" and conceded that she could have been referring to Hopper who she also viewed as a son. He added that, when Dowell as sitting in the zone car at the scene, "she did state that her son was on the scene but had fled the area." (Tr. 164-165.) Dowell did not name the son, but the officer later learned that Bell was her son.

**{¶98}** Hopper had just been shot and Dowell witnessed her son Bell leaving the scene. The evidence demonstrates that Dowell was hysterical and distressed at the scene pursuant to Evid.R. 802(3) as confirmed by Paige's testimony. In addition, Dowell testified during trial that Bell left the scene in Paige's car, rendering any asserted error harmless. Crim.R. 52(A).

*State v. Djuric*, 8th Dist. Cuyahoga No. 87745, 2007-Ohio-413, ¶ 21, citing *State v. Allen*, 102

Ohio App.3d 696, 700-701, 657 N.E.2d 843 (8th Dist.1995).

{¶99} The eighth assigned error is without merit.

**H. Admission of Other Acts Evidence**

{¶100} Bell asserts under his ninth assigned error that the trial court's admission of an

officer's testimony that Paige reported that shots were fired into her residence days after the

incident was improper and requires a new trial, citing this court's decision in *In re C.T.*,

2013-Ohio-2458, 991 N.E.2d 1171 (8th Dist.). Evid.R. 404(A) bars the admission of

"[e]vidence of a person's character or trait of character" for the purpose of "proving action in

conformity therewith."

{¶101} Without a defense objection before the trial court, we review for plain error.

> To prevail under a plain error analysis, a defendant bears the burden of demonstrating that, but for the error, the outcome of the trial clearly would have been different. *State v. Alexander*, 8th Dist. Cuyahoga No. 87109, 2006-Ohio-4760; *see* Crim.R. 52(B). Notice of plain error "is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *Id.*, citing *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978).

*State v. Mallette*, 8th Dist. Cuyahoga No. 87984, 2007-Ohio-715, ¶ 12.

{¶102} *In re C.T.* was remanded to this court to apply the then newly developed

three-part test prescribed in *State v. Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, 983 N.E.2d

1278, to determine whether the evidence is admissible:

> "'The first step is to consider whether the other acts evidence is relevant to making any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence, Evid.R. 401. The next step is to consider whether evidence of the other crimes, wrongs, or acts is presented to prove the character of the accused in order to show activity in conformity therewith or whether the other acts evidence is presented for a legitimate purpose, such as those stated in Evid.R. 404(B). The third step is to consider whether the

probative value of the other acts evidence is substantially outweighed by the danger of unfair prejudice. *See* Evid.R. 403.'"

*In re C.T.* at ¶ 16, quoting *Williams* at ¶ 20.

**{¶103}** Det. Ford testified that he and Det. Fischbach responded to the shooting report. During cross-examination, Det. Ford added that it had "not been determined" whether the shooting had any connection with Bell. (Tr. 287.)

**{¶104}** Evid.R. 404(B) does permit "such evidence to be introduced for other purposes, such as for 'proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.'" *In re C.T.* at ¶ 6, citing Evid.R. 404(B).

**{¶105}** Addressing the first two steps, this court finds that the testimony that shots were fired into Paige's residence several days after the shooting "is not relevant to making any fact that is of consequence to the determination of the action more or less probable" or that it was represented to prove Bell's conduct or character. *Williams* at ¶ 20. Police also testified that they had not determined whether Bell was connected. In addition, Bell was in custody at the time and had confessed to the shooting.

**{¶106}** Finally, as to the third prong of the test, based on the same facts supporting our analysis of steps one and two, we do not find that the "probative value of the other acts evidence" "was substantially outweighed by the danger of unfair prejudice." *Id.* Bell has not demonstrated prejudice, that but for the admission of the testimony, the outcome of the trial would have been different. *Mallette*, 8th Dist. Cuyahoga No. 87984, 2007-Ohio-715, ¶ 12, citing *Alexander*, 8th Dist. Cuyahoga No. 87109, 2006-Ohio-4760 and Crim.R. 52(B).

**{¶107}** The ninth assignment of error is also overruled.

**I.     Consecutive Sentences**

**{¶108}** This court observes, sua sponte, that the sentencing entry in this case did not contain the requisite consecutive sentencing findings pursuant to R.C. 2929.14(C)(4). A sentencing judgment must make three statutory findings prior to imposing consecutive sentences and the findings must be incorporated in the journal entry. *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio- 3177, 16 N.E.3d 659, ¶ 29. A trial court must find that consecutive sentences are "necessary to protect the public from future crime or to punish the offender." R.C. 2929.14(C)(4). The trial court must also find that "consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public." *Id*.

**{¶109}** Finally, the trial court must find that at least one of the following applies:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction * * *, or was under postrelease control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

R.C. 2929.14(C)(4).

**{¶110}** The trial court advised Bell that consecutive sentences were (1) "necessary to protect our community and [to] punish you," (2) "not disproportionate to your acts in this matter," (3) appropriate because "a single term would not adequately reflect the seriousness of your conduct," and (4) it is "clear that this sentence will be required to protect the public." (Tr.

425.)  The trial court also cited Bell's criminal history and that Bell was on postrelease control at the time of the shooting.

**{¶111}**  The trial court's findings on the record satisfy R.C. 2929.14(C)(4).  However, the trial court failed to incorporate its findings in the journal entry.

> A trial court's inadvertent failure to incorporate the statutory findings in the sentencing entry after properly making those findings at the sentencing hearing does not render the sentence contrary to law; rather, such a clerical mistake may be corrected by the court through a nunc pro tunc entry to reflect what actually occurred in open court.

*Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.2d 659, ¶ 30.

## IV.    Conclusion

**{¶112}**  Bell's convictions and sentences are affirmed.  The case is remanded for the limited purpose of issuing a nunc pro tunc entry incorporating the required statutory findings for consecutive sentences.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
ANITA LASTER MAYS, JUDGE

SEAN C. GALLAGHER, P.J., and
FRANK D. CELEBREZZE, JR., J., CONCUR